### Soozan Pirdair, et al. v. Medical Center Hospital of Vermont

[800 A.2d 438]

No. 00-443

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 29, 2002
Motion for Reargument Denied April 25, 2002

412

*John F. Evers* and *Devin McLauglin* of *Langrock Sperry & Wool,* Middlebury, and *Michael P. Hall* of *Hall, Hess, Stewart, Murphy & Brown,* Manchester, New Hampshire, for Plaintiffs-Appellants.

*John Davis Buckley* and *Peter B. Joslin* of *Theriault & Joslin, P.C.,* Montpelier, for Defendants-Appellees.

**Morse, J.** Plaintiffs appeal from the judgment of the superior court following a jury verdict in favor of defendants on their claim for medical malpractice. Plaintiffs Sandra Baird, the administrator of the estate of Ahmad Sharifian and guardian for Mr. Sharifian's wife, Soozan Pirdair, and Mary Kehoe, the guardian of Mr. Sharifian's son Boback Sharifian, pursued a claim brought against defendants Dr. Bela Ratkovits, Associates in Radiology and Fletcher Allen, as successor in interest to Medical Center Hospital of Vermont, for failing to detect a subdural hematoma that resulted from a car accident involving Mr. Sharifian.* Plaintiffs argue the trial court erroneously denied their motions for a new trial based on newly discovered evidence and based on their contention that the verdict was against the great weight of the evidence. Plaintiffs also argue

---

* Fletcher Allen settled with the plaintiffs and is no longer a party to these proceedings.

that the trial court committed reversible error by admitting certain statements of Mr. Sharifian made prior to his death. We affirm.

The following facts are undisputed. Mr. Sharifian, his wife and son were involved in a car accident on July 3, 1994. He was brought to Medical Center Hospital of Vermont and treated for various injuries, including a broken leg and contusions on his head, as well as a fracture of one of the vertebrae in his neck. He was also given a CAT scan that day because of concern regarding a head injury. The CAT scan was then evaluated on July 5 by Dr. Ratkovits of Associates in Radiology, which contracted with MCHV to read the hospital's CAT scans. Although the CAT scan showed signs of a small subdural hematoma on the right side of Mr. Sharifian's head, Dr. Ratkovits did not detect it. MCHV continued to treat Mr. Sharifian for his other injuries.

On July 7, Mr. Sharifian fell to the floor after using a walker to get to the bathroom in the hospital room he shared with his wife, who was also being treated for a broken vertebra from the accident. When hospital personnel responded to a scream from his wife, they found him in a nonresponsive state on the floor, with his head against the wall. A CAT scan revealed a large subdural hematoma on the right side of his head, and Mr. Sharifian was rushed to surgery. Surgery revealed two ruptured veins in Mr. Sharifian's brain. Despite the surgery, Mr. Sharifian suffered severe brain damage and remained in a coma for fifteen months before he was finally taken off life support in September 1995.

Ms. Pirdair brought suit against defendants as the administrator of her husband's estate, on behalf of the couple's son and on behalf of herself. Eventually, she was replaced as administrator of the estate, and a guardian ad litem was appointed for both her and her son as the toll of the events had rendered her unable to proceed on her own. The case proceeded to trial, which resulted in a jury verdict in favor of defendants. Plaintiffs now appeal.

In support of their claim that the trial court improperly denied them relief from judgment and a new trial, plaintiffs make two related arguments that center on the interpretation given the July 7 CAT scans by the parties' experts and Mr. Sharifian's treating doctors. They argue that newly discovered evidence that sheds light on the proper interpretation of the scans entitles them to a new trial under V.R.C.P. 60(b)(2) and that this new evidence reveals that the opinions of defendants' experts regarding interpretation of the scans amounted to misrepresentations, thus entitling them to a new trial under V.R.C.P. 60(b)(3). We review the trial court's decision on such motions

for an abuse of discretion. See, e.g., *Stalb v. Stalb*, 168 Vt. 235, 248, 719 A.2d 421, 429-30 (1998) (reviewing denial of Rule 60(b) motion based on newly discovered evidence).

Following the trial in this case, one of the plaintiffs' experts treated a patient with a subdural hematoma that appeared to have a mixed density on a CAT scan taken four days after the trauma giving rise to the hematoma. Plaintiffs argue specifically that they should be relieved from the final judgment in this case and given an opportunity to present these CAT scans to a jury in a new trial in order to support the opinions of their experts regarding the mixed density appearance of Mr. Sharifian's July 7 CAT scans. They also argue that this piece of evidence demonstrates that the opinions of defendants' experts that a four-day-old hematoma would not appear to have a mixed density were misrepresentations. The trial court denied plaintiffs' motion on the basis that, even assuming the evidence could be characterized as "newly discovered," it merely went to the weight and credibility of the expert opinions. The trial court also noted that the opinions of defendants' experts on the appearance of a four-day-old subdural hematoma were only a minor part of the defense's case and were not central to the theories they litigated. Thus, plaintiffs had failed to demonstrate that letting the judgment stand would result in a miscarriage of justice. See *Bingham v. Tenney*, 154 Vt. 96, 99, 573 A.2d 1185, 1186 (1990) (rule allowing for relief from judgment is invoked to prevent injustice).

▮We discern no abuse of discretion. Both parties presented substantial evidence in support of their respective experts' opinions, which also served to undermine opinions to the contrary. Additional evidence such as the case study now offered by plaintiffs, while potentially helpful, would be cumulative on this point and thus should not operate to relieve them from final judgment. See 11 C. Wright, et al., Federal Practice and Procedure § 2859, at 307-08 (2d ed. 1995) (judgment will not be reopened if newly discovered evidence is cumulative and would not change result); see also *United States v. Int'l Bhd. of Teamsters*, 179 F.R.D. 444, 447-48 (S.D.N.Y. 1998) (noting that new evidence that is merely cumulative or impeaching is not ordinarily a sufficient basis for relief from judgment and denying party relief from judgment based on newly discovered impeachment evidence). Otherwise, any newly discovered evidence in a particular field that incrementally bolsters or rebuts an expert's opinion would justify a new trial, thereby undermining the finality of judgments in cases involving a "battle of experts." Cf. *Mitchell v. United States*, 141 F.3d

8, 18-19 (1st Cir. 1998) (affirming denial of Rule 60(b) motion based on recently published article in medical journal supporting party's expert testimony regarding standard of care in medical malpractice action, noting article's marginal helpfulness regarding the specific case before the court).

■Furthermore, we are not prepared to say that an individual medical case that appears to be at odds with an expert's generalized opinion in a highly specialized and recondite discipline such as neuroradiology somehow renders that opinion a "misrepresentation" of fact. Cf. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 734 (7th Cir. 1999) (noting trial court's conclusion that "newly discovered evidence" merely demonstrated a difference of opinion among experts and that "such a scholarly and subjective disagreement was not a sound basis for finding that [defendants' expert] lied on the witness stand"). Nevertheless, even if we were to accept that assertion, the plaintiffs as the moving party must still demonstrate that the misrepresentation prevented them from fully and fairly presenting their case. See C. Wright, et al., *supra*, § 2860, at 313. First, as the trial court noted, defendants' theory that a four-day-old hematoma should not manifest a mixed density appearance on a CAT scan did not constitute the gravamen of their defense. Rather, they focused on the clinical observations of Mr. Sharifian displaying a high level of functioning, physically and cognitively, and their incompatibility with a subdural hematoma the *size* of the one shown on the July 7 CAT scans. Secondly, while the issue of the appearance of a four-day-old subdural hematoma was not even central to defendants' case, plaintiffs still had the opportunity to cross-examine defendants' experts on this point, as well as offer their competing experts' opinions to the contrary, which is exactly what they did. Cf. *Jones*, 188 F.3d at 735-36 (affirming trial court's denial of Rule 60(b) motion on basis that subtracting expert opinion that plaintiff asserted was false would not materially alter outcome where plaintiff had opportunity to test opinion on cross-examination, offered his own expert testimony to the contrary and testimony was related to defendants' alternate theory of the case, not the central theory litigated by the parties). Rule 60(b) is not designed to afford parties simply a second, better opportunity to litigate issues already contested and decided in a previous proceeding. Cf. *Darken v. Mooney*, 144 Vt. 561, 566, 481 A.2d 407, 411 (1984) (Rule 60(b) does not operate to afford parties a chance to relitigate matters in which there was ample time to prepare).

416

Plaintiffs also argue that the trial court erred in denying their motion for a new trial under V.R.C.P. 59 based on their assertion that the jury's verdict in this case was against the great weight of the evidence. The trial court's decision on a Rule 59 motion is likewise reviewed for an abuse of discretion. *Brueckner v. Norwich Univ.*, 169 Vt. 118, 132, 730 A.2d 1086, 1097 (1999). When considering a motion for a new trial in such circumstances, a trial court must view the evidence in the light most favorable to the jury verdict. *Hardy v. Berisha*, 144 Vt. 130, 133, 474 A.2d 93, 95 (1984). " 'Only after the evidence is so viewed, and the verdict is shown to be clearly wrong and unjust because the jury disregarded the reasonable and substantial evidence, or found against it, because of passion, prejudice, or some misconception of the matter, can the court exercise its discretion to set aside the verdict.' " *Gregory v. Vt. Traveler, Inc.*, 140 Vt. 119, 121, 435 A.2d 955, 956 (1981) (quoting *McKenna v. May*, 134 Vt. 145, 148, 353 A.2d 359, 361 (1976)); see also *Hardy*, 144 Vt. at 134, 474 A.2d at 95 ("it is the protected duty of the jury to render a verdict, and a judge may not disturb that verdict unless it is clearly wrong") (citations omitted). We accord the trial court's ruling "all presumptive support" similar to that owed the jury verdict. *Gregory*, 140 Vt. at 121, 435 A.2d at 956.

In a case such as this where the jury was asked simply to issue a general verdict, plaintiffs must demonstrate that the jury disregarded substantial evidence in their favor on each contested element necessary for recovery and that a verdict based on a finding in defendants' favor on any one of these elements was clearly wrong. Cf. *Contractor's Crane Serv., Inc. v. Vt. Whey Abatement Auth.*, 147 Vt. 441, 446, 519 A.2d 1166, 1171 (1986) (where defendants had not requested a special verdict form and plaintiff advanced several theories of recovery, defendants must demonstrate error affecting all theories of recovery for reversal; if any single theory is supported by the evidence and is untainted by error, this Court must affirm). The parties in this case contested both whether Dr. Ratkovits' failure to discern the subdural hematoma fell below the standard of care and whether this failure was the cause of the events of July 7 and the ensuing consequences. There is evidence supporting the jury's verdict in favor of defendants on both issues.

With respect to whether Dr. Ratkovits' failure to identify the subdural hematoma evidenced on the July 3 CAT scan fell below the standard of care, one of defendants' experts, a professor of radiology at Dartmouth Medical School and a neuroradiologist at Dartmouth-Hitchcock Medical Center, unequivocally stated that the failure was

not a deviation from the standard of care and that an individual could "easily miss" the subdural hematoma on the July 3 scans and still be practicing within the standard of care for neuroradiologists. Another of defendants' experts, a neurosurgeon and former chairman of nuerosurgery at Dartmouth-Hitchcock, after looking at the July 3 CAT scans of Mr. Sharifian, stated that he probably would have missed the subdural hematoma himself.

With regard to whether the hematoma evidenced on July 3 was the cause of the catastrophic events of July 7, several of defendants' experts, along with Mr. Sharifian's attending neurosurgeon, were of the opinion that, based on all the available evidence, the large hematoma evidenced on the July 7 CAT scan was caused by an independent event, such as a fall in the bathroom. Specifically, Mr. Sharifian's attending neurosurgeon testified that the blood he observed in the course of surgery on July 7 was consistent in color with a new bleed, rather than a gradual bleed over the course of several days. Furthermore, the surgeon's testimony agreed with that of defendants' experts that Mr. Sharifian's functioning on July 6 and the morning of July 7, as reported by nurses and a physical therapist, was completely at odds with a hematoma that had gradually expanded to the size of that depicted on the CAT scan performed after Mr. Sharifian was found on the floor of the bathroom. Even one of plaintiffs' experts testified that, although there are exceptions, looking at the July 7 scans alone, he would expect Mr. Sharifian to be exhibiting clinical abnormalities and to be significantly impaired in his functioning had he been suffering from a hematoma the size of the one on the scans prior to his going into the bathroom. Defendants also presented testimony by a neuropathologist that a pathology slide taken from the material evacuated during the July 7 surgery was consistent with Mr. Sharifian suffering two separate events, as the blood cells on the slide were of distinctly two different ages. In sum, viewing the evidence in the light most favorable to the jury's verdict, we cannot say the trial court abused its discretion in refusing to set aside the verdict.

Plaintiffs' last claim of error relates to a statement made by Mr. Sharifian in the course of interacting with hospital personnel. Prior to trial, plaintiffs sought to exclude under V.R.E. 403 a statement by Mr. Sharifian that he felt guilty about the car accident involving his family. The statement was recorded by his physical therapist in her progress notes. Defendants argued in opposition that the statement reflected a high level of cognitive functioning and was probative on the point of

whether Mr. Sharifian was exhibiting clinical symptoms of a gradually expanding hematoma. The trial court reserved ruling on the matter until trial. At trial, the court ruled that the unredacted progress notes could come in, determining that the prejudicial potential of the statement was equivocal and that Mr. Sharifian's statement was probative of cognitive functioning, which was an issue contested by the parties. The court issued a limiting instruction, however, admonishing the jury that fault for the underlying car accident was not an issue in the case and that, regardless of fault for the car accident, Mr. Sharifian was still entitled to proper medical care. Given the trial court's limiting instruction, see *State v. Shaw*, 149 Vt. 275, 279, 542 A.2d 1106, 1108 (1987) (noting presumption that jury abides by the instructions of the trial court), we discern no abuse of discretion, nor reversible error in admitting the unredacted report. See *State v. Percy*, 158 Vt. 410, 415, 612 A.2d 1119, 1123 (1992) (noting a discretionary ruling admitting relevant evidence under Rule 403 is given considerable latitude on appeal and the burden to show an abuse of discretion is heavy).

*Affirmed.*