*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-063

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re C.B., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Bennington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 112-8-09 Bnjv |

Trial Judge: Karen R. Carroll

In the above-entitled cause, the Clerk will enter:

Father appeals from a judgment of the superior court, family division, terminating his parental rights to the minor C.B. He contends the trial court improperly: (1) based its decision on an assumption or implicit finding that father sexually assaulted C.B. in the absence of clear and convincing evidence; and (2) failed to rule on father's request for a new hearing. We affirm.

The material undisputed facts may be summarized as follows. In August 2009, the trial court issued an emergency care order placing C.B.—then aged twelve—in DCF custody based on allegations that father had sexually assaulted her with her mother's knowledge. Father was arrested on the same day and held without bail. He was subsequently charged with three counts of aggravated sexual assault. Father remained incarcerated throughout the period leading up to his trial in March 2011. Following a jury trial, father was convicted of two of the charged counts. He was sentenced in September 2011 to two concurrent sentences of twenty-five years to life. A correctional officer testified that father's earliest release date is August 25, 2034.

Following the emergency care order, C.B. was placed with a foster family in October 2009, where she has since remained. She was adjudicated CHINS in November 2009 based, in part, on findings that father had repeatedly sexually assaulted her over the course of several years. The initial case plans called for father to participate in a number of counseling programs and for C.B.'s eventual reunification with mother. In July 2011, the goal was changed to termination of both parents' parental rights. Mother voluntarily relinquished her parental rights at a hearing in October 2011.

Father's termination hearing was held in January 2012. Father was then incarcerated in Kentucky and appeared by telephone. His attorney was present at the hearing. In addition to the correctional officer's testimony as to father's convictions and minimum release date, C.B.'s social worker testified that C.B. had not had any contact with father since his incarceration more than two years earlier and "wants nothing to do with her father." She observed that C.B. had adjusted very well to the home of her foster parent who, in the social worker's estimation, "had saved [C.B.'s] life." C.B.'s foster parent testified that C.B. had initially struggled with trusting

people, particularly men, but had improved over time, had formed strong relationships with some teachers, and was doing well in school.

The court issued a written ruling in late January 2012, granting the petition. The court explained that its decision was based principally on the fact that father had had no contact with C.B. for more than two years due to his incarceration, that his minimum release date was over twenty years away, that he had not been able to address any of the initial case plan goals, and that C.B.—who was then fifteen years old—has no desire to be in contact with father. The court further explained that its decision would be the same even if father's conviction, then on appeal, were reversed. The court noted, in this regard, that father would likely remain incarcerated pending retrial in light of his bail history or, if released, would be subject to severe restrictions on his contact with C.B., and that during this period DCF and the court would likely require father to undergo a program of sex offender treatment in view of DCF's substantiated finding that he had abused C.B. Therefore, the court found, even if afforded "a new trial, [father] will be unable to parent C.B. for any reasonable period of time." The court noted, as well, C.B.'s attachment to her foster family and desire to be adopted by her foster parent. Accordingly, the court concluded that termination was in the best interests of the child. This appeal followed.

Father contends that the trial court erroneously relied on an "assumption or implied finding" that he sexually assaulted C.B. despite the absence of clear and convincing evidence to that effect. Father cites four specific statements in the court's decision to support the claim. Two are simple statements of fact—one noting that the CHINS adjudication was based on a finding of sexual abuse and the other that father had been convicted of two counts of sexual assault—and do not suggest or imply a finding by the court that father actually committed the offenses. These statements of fact support the court's decision that father will not be likely to resume his parental duties within a reasonable period of time; that is, he will be unable to care for C.B. given his legal situation. See 33 V.S.A. § 5114(3).

The third statement notes that DCF had "substantiated" the allegations of assault. Again, however, it is clear from the context that this was not to show that the assaults had occurred, but simply to explain why reunification was not an immediately available option if father's conviction were overturned. The fourth and final statement describes C.B. as "consistent in her statements that her father sexually assaulted her more than once." Father asserts that this was based on hearsay from C.B.'s social worker, and cannot support a finding that he committed the assaults. Although there was no hearsay objection raised at trial, the critical point is that the court was not citing C.B.'s allegations to prove the assaults, but merely to explain why C.B. wanted to have no contact with father. Accordingly, we find no merit to the claim.

Father also contends that the trial court abused its discretion in failing to rule on a letter that he characterizes as a Rule 59 motion for new trial. The handwritten letter from father was filed by his trial attorney one week after the court's decision, asserted that father was unable to consult with his attorney during the hearing because father was not personally present, and asked the court to "re do" the entire matter. The docket entries show that it was docketed as a "letter" and was not ruled on by the trial court.

Even if the letter were more properly treated as a motion for new trial, we discern no error warranting reversal of the judgment. The record of the hearing shows no objection by

2

father or his attorney to father's participation by telephone. Moreover, the letter neither alleges nor shows how father's asserted inability to consult with counsel during the hearing substantially prejudiced the outcome and resulted in a miscarriage of justice. See <u>Pirdair v. Med. Ctr. Hosp. of Vt.</u>, 173 Vt. 411, 414 (2002) (denying motion for new trial where plaintiff "failed to demonstrate that letting the judgment stand would result in a miscarriage of justice"). Accordingly, any error in the court's failure to rule on father's letter was harmless.

<u>Affirmed</u>.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice

3