NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 47

No. 24-AP-229

| | |
|---|---|
| Arthur G. Watrous, Administrator Estate of Arthur H. Watrous | Supreme Court |
| v. | On Appeal from Superior Court, Addison Unit, Civil Division |
| Porter Medical Center | May Term, 2025 |

David R. Fenster, J.

John F. Evers of Shoup Evers & Green, Burlington, for Plaintiff-Appellant.

Elizabeth B. Yoquinto, Albany, New York, and Peter B. Joslin, Jr. of O'Connor, O'Connor, Bresee & First, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **COHEN, J.**  Plaintiff Arthur G. Watrous, the administrator of the Estate of Arthur H. Watrous, appeals the denial of his motion for a new trial after a jury found for defendant Porter Medical Center on plaintiff's claims of negligence and wrongful death.  Plaintiff argues the trial court abused its discretion in denying him a new trial because the jury's conclusion that plaintiff failed to prove the standard of care was against the weight of the evidence.  We affirm.

¶ 2.     The following evidence was presented at the August 2023 trial.  Decedent Arthur H. Watrous was an eighty-six-year-old man with Parkinson's disease, COPD, and other medical complications.  Decedent was admitted to Porter Medical Center on May 10, 2016, for increasing weakness, difficulty walking, and auditory hallucinations.  The admitting physician noted that decedent's symptoms could be explained by an adverse interaction of two medications given to him by his neurologist to treat his Parkinson's disease.  While at Porter Medical Center, decedent

became increasingly agitated and aggressive, removing his telemetry box and swinging at and hitting hospital staff. Nursing staff described him as "acutely delirious." To address decedent's aggression and calm him down for treatment, the hospital staff elected to use a chemical restraint known as Zyprexa. Nurse Sanders contacted decedent's daughter to gain approval for the use of Zyprexa in a 2.5mg dose, to which his daughter consented. Nurse Griffith ordered the dosage for 2.5mg of Zyprexa "every 4 hours," or "Q4H." The parties disputed whether this terminology indicated a scheduled order or an order for as-needed administration every four hours.

¶ 3.     Around 1:38 a.m. on May 11, 2016, Nurse Sanders administered decedent's first dose of Zyprexa. The records state that decedent began to calm down and by 2:45 a.m., he was resting with his eyes closed. Nurse Sanders testified that decedent later became agitated again and "exhibit[ed] the same symptoms" as before the first dose of Zyprexa. At around 5:58 a.m., Nurse Sanders administered a second dose of Zyprexa. Around 8:00 a.m., decedent's oxygen-saturation level dropped to fifty-nine percent. He was intubated and subsequently transferred to UVM Medical Center for respiratory distress. Decedent died on May 14, 2016. His cause of death was believed to be septic shock related to aspiration pneumonia.

¶ 4.     Both parties presented expert testimony regarding the standard of care for use of chemical restraints, and plaintiff presented evidence of defendant's policy regarding chemical restraints. At the conclusion of the trial, the jury was given a special verdict form that asked, "Did [plaintiff] prove the standard of care?" The jury answered "no." Consistent with the form's instructions, the jury did not decide whether defendant violated the standard of care, whether the violation caused harm to decedent, or whether plaintiff was entitled to damages.

¶ 5.     Plaintiff moved for a new trial pursuant to Vermont Rule of Civil Procedure 59, arguing the evidence did not support the jury's verdict. Specifically, plaintiff argued that he had proved to the jury that Zyprexa should not be given to a patient who is asleep, an assessment of the patient must be conducted before administering Zyprexa, Zyprexa should not be given on a

scheduled basis, and defendant's chemical-restraint policy is consistent with, based on, and reflects this standard of care.

¶ 6. The court denied plaintiff's motion. The court concluded that there was no evidence that the jury based its decision on passion or prejudice. Thus, the question was whether the jury disregarded reasonable and substantial evidence or disregarded it due to some misconception. The court reasoned that the jury heard conflicting evidence regarding the components of a standard of care applicable to different scenarios, but there was no undisputed evidence regarding the specific standard of care applicable to decedent's circumstances. The court concluded that the conflicting testimony regarding the hospital policy for administering Zyprexa—and the reliability of the policy itself in determining the standard—reasonably made it difficult for the jury to decide on the applicable standard of care. Plaintiff appealed.

¶ 7. The sole issue in this case is whether the trial court abused its discretion in denying plaintiff's motion for a new trial. "The law favors upholding jury verdicts." Shahi v. Madden, 2008 VT 25, ¶ 14, 183 Vt. 320, 949 A.2d 1022. As such, we review a decision to deny a motion for a new trial for an abuse of discretion. Epsom v. Crandall, 2019 VT 74, ¶ 17, 211 Vt. 94, 220 A.3d 1247. The trial court must view the evidence in the light most favorable to the jury verdict and may only exercise its discretion to set aside the verdict if "the verdict is shown to be clearly wrong and unjust because the jury disregarded the reasonable and substantial evidence, or found against it, because of passion, prejudice, or some misconception of the matter." Pirdair v. Med. Ctr. Hosp. of Vt., 173 Vt. 411, 416, 800 A.2d 438, 442-43 (2002) (quotation omitted). We give the trial court's ruling on a Rule 59 motion "all presumptive support similar to that owed the jury verdict." Id. at 416, 800 A.2d at 443 (quotation omitted). We will hold a trial court abused its discretion only when "such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." Weeks v. Burnor, 132 Vt. 603, 606, 326 A.2d 138, 140 (1974).

¶ 8.    In a medical-malpractice case, "plaintiff has the burden of proving the applicable standard of care, that defendant breached that standard, and that as a proximate result plaintiff suffered injuries that would not otherwise have occurred." Taylor v. Fletcher Allen Health Care, 2012 VT 86, ¶ 12, 192 Vt. 418, 60 A.3d 646. (quotation omitted).  The standard of care in a medical-malpractice case is defined by statute to mean "the degree of knowledge or skill possessed or the degree of care ordinarily exercised by a reasonably skillful, careful, and prudent health care professional engaged in a similar practice under the same or similar circumstances whether or not within the State of Vermont."  12 V.S.A. § 1908(1).

¶ 9.    Plaintiff argues that the jury was asked to determine the degree of care required in determining whether to administer a second dose of Zyprexa, a chemical restraint, to an elderly patient with an underlying respiratory condition who was suffering from an adverse reaction to a change in his Parkinson's disease medication.  Plaintiff argues that the undisputed evidence presented below established that under these circumstances, the standard of care required a qualified individual to assess the patient before administering the Zyprexa.  If that individual determined that the medication was needed, it could only be ordered by an individual with the authority to do so and only on a one-time basis and not as a scheduled order.  Finally, the patient had to be reassessed before a subsequent dose was administered, unless the patient was in immediate danger.  Plaintiff also asserted that the hospital policy is merely relevant to understanding the standard and often reflects the standard of care, but that the policy itself does not establish the standard of care.

¶ 10.    We conclude that the trial court acted within its discretion in denying plaintiff's motion.  While there was agreement by both experts on the standard of care for prescribing and administering the chemical restraint, plaintiff did not rely on that sole specific duty as his theory of the case.  The trial court addressed each of plaintiff's assertions by comparing testimony from both experts as well as the testimony from the nurses who treated decedent, explaining that the jury heard multiple different versions of each element of the alleged standard of care.

4

¶ 11.   The jury heard that the deviation from the standard of care occurred when "there was no evaluation done at that time to determine if the patient needed a second dose of Zyprexa," but also that the hospital policy does not require evaluation before administering the second dose and instead requires that a patient "must be seen face-to-face within 1 hour after the initiation of the intervention." The jury heard that the policy and the standard of care are "one [and] the same," and the policy "coincided with the medical care," but also that "[p]olicies do not dictate medical judgment calls." While plaintiff is correct that he was not required to prove the hospital policy and the standard of care were the same, plaintiff told the jury that this would be the case. Apparently, the evidence presented failed to convince the jury. When presented with conflicting testimony, "[i]t is the jury's prerogative to weigh the testimony and to choose the evidence it finds persuasive. The credibility of witnesses, even expert witnesses, is a matter for the trier of fact." Claude G. Dern Elec., Inc. v. Bernstein, 144 Vt. 423, 426, 479 A.2d 136, 138 (1984) (citation omitted).

¶ 12.   Plaintiff asserts the court misconstrued the term "the same or similar circumstances" in concluding that the jury could have found that the prohibition against administering Zyprexa to a sleeping patient was not the applicable standard of care. See 12 V.S.A. § 1908(1). He argues that the court focused too narrowly on whether the jury decided whether decedent was asleep or not, when it should have considered decedent's age, medical history, and the medications he had already been given. However, at trial plaintiff relied heavily on his claim that Zyprexa was administered to decedent while he was sleeping, emphasizing portions of the medical records that suggested decedent was sleeping around the time of the second dose. In response, defendant provided testimony that decedent was not sleeping at the time he was administered the second dose. As the trial court explained, plaintiff's emphasis on decedent's alleged lack of consciousness could have left the jury conflicted as to what "the same or similar circumstances" were in order to establish the appropriate standard of care. It was the jury's responsibility to weigh the conflicting testimony, and it decided this issue against plaintiff.

5

¶ 13.    Plaintiff argues that both experts agreed that chemical restraints should not be given on a scheduled basis and that giving Zyprexa on a scheduled basis violates the standard of care. However, there was conflicting evidence as to whether the order for Zyprexa was issued as a scheduled order. The order as written states "every 4 hours," or "Q4H," but Nurse Sanders testified that he interpreted this order to mean administering Zyprexa as needed in four-hour intervals. Viewing the evidence in the light most favorable to the verdict, this testimony could have led the jury to conclude that even if the standard of care prohibited scheduled administration of Zyprexa, that was not the applicable standard of care under the circumstances.[*] Further conflicting testimony established that Zyprexa should be administered on a one-time basis with additional reassessment but also that Zyprexa should be administered on an as-needed basis, or PRN order. In sum, plaintiff failed to meet the burden of proof for establishing the applicable standard of care.

¶ 14.    The parties presented conflicting evidence as to the proper standard of care for administering Zyprexa. We agree with the trial court that the evidence of the applicable standard of care was not so clear that the jury erred in concluding that plaintiff had failed to establish that element. The court acted within its discretion in denying a new trial given the state of the record. See Weeks, 132 Vt. at 606, 326 A.2d at 140.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[*] The trial court also stated, "the jury could have concluded that since Nurse Sanders did not have the authority to order Zyprexa that any prohibition of a scheduled order for Zyprexa was not the standard of care because it was not applicable under the circumstances." Plaintiff argues the undisputed testimony establishes that scheduled orders of Zyprexa are prohibited as the standard of care, and it was therefore irrelevant for the court to consider whether Nurse Sanders or Nurse Griffith administered the medication. The premise of plaintiff's argument fails because as we have explained, the jury did not agree that the prohibition of scheduled orders was the applicable standard of care.