2011 VT 54

**In re Estate of Orville TUCKER**

[25 A.3d 547]

No. 09-438

¶ 1. May 20, 2011. Appellant, testator's daughter, seeks reversal of the trial court's judgment declining to admit testator's purported last will and testament to probate. This judgment followed a trial by jury, which rendered a special verdict finding that testator lacked testamentary capacity. Appellant raises various issues relating to the burden of proof, the use of the doctrine of suspicious circumstances, the jury instructions, and the denial of post-judgment motions. We conclude that all of appellant's claims are moot or unpreserved, and accordingly, we affirm.

¶ 2. The relevant facts are not in dispute. Testator passed away on March 14, 2005, leaving four living children: two daughters and two sons. Two of these children, one son and one daughter ("son" and "daughter"), are the opposing parties in this case. On October 20, 2004, testator executed a will that was contrary to his earlier wills and left the bulk of his property to daughter and to a second son, who is not a party to this action. Testator had written at least two wills before the 2004 will, one in 1981 and another in 1991. In his 1981 will, testator left his home and farm to son. Son had been instructed in the will to provide a home for his sister, who has cerebral palsy and who is not participating in this case. The 1981 will left one dollar to daughter. In 1991, testator executed a second will that was similar in purpose to his 1981 will. This 1991 will left testator's home and farm to son with an instruction to provide a life estate for his sister. It left daughter "$1.00, since she has already received a six and one-half (6.5) acre parcel of land as her share of [the] estate."

¶ 3. Testator's wife predeceased him on March 27, 2004. Several months later, testator petitioned the probate court to appoint daughter as his voluntary guardian. The probate court appointed daughter "guardian of the person and property of [testator]" on July 29, 2004.

¶ 4. In the fall of 2004, daughter contacted an attorney on behalf of testator in order to create a new will. Daughter drove testator to appointments with his attorney, and testator signed his new will and testament on October 20, 2004. The

2004 will leaves forty-five percent of the estate to daughter. This will does not significantly provide for son or for his sister with cerebral palsy; it leaves them each one dollar and includes a handwritten note that the sister should also receive two rooms of furniture. Contrary to his earlier wills, the 2004 will does not provide for the sister's living arrangements.

¶ 5. After testator's death, daughter petitioned to open a testate estate and to admit testator's 2004 will to probate. Son contested this filing. The probate court concluded that the will was properly executed in accordance with 14 V.S.A. § 5; however, it also found that testator was not able to recall to mind the nature and extent of his property, nor was he able to dispose of his property in accordance with "some plan formed in his mind." The probate court concluded that undue influence was used to procure the 2004 will and declined to admit it to probate. Daughter appealed to the trial court, requesting a jury trial.

¶ 6. The parties agreed that the major issues before the trial court were testamentary capacity and undue influence. They skirmished over which party had the burden of proof with respect to undue influence. Daughter argued that son had the burden because he was asserting undue influence and because there were no suspicious circumstances. Son argued that there were suspicious circumstances so that the burden shifted to daughter. They agreed that the court had to determine whether suspicious circumstances were present to allocate the burden of proof. See *In re Estate of Raedel*, 152 Vt. 478, 481-82, 568 A.2d 331, 333 (1989) (recognizing that burden of proof shifts to proponent of will when there are suspicious circumstances and that "[t]he existence of suspicious circumstances is a preliminary question for determination by the court"). In response to daughter's motion that the court determine whether suspicious circumstances were present in advance of trial, the court ruled that it would determine whether suspicious circumstances were present based on the evidence submitted to the jury and inform the jury of its decision at the end of the evidence. Further, at a pretrial conference, the court stated it would also reserve the issue of which party had the burden of proof on testamentary capacity until after the jury had heard all the evidence. Daughter did not object to this decision.[1] At that time, both parties agreed with this decision.

¶ 7. Following the evidence, the trial judge ruled that suspicious circumstances were present, and, as a result, daughter had the burden to rebut a presumption of undue influence. The court also ruled that daughter had the burden to show testamentary capacity. The jury returned a special verdict finding testator lacked testamentary capacity and did not reach the issue of undue influence. Based on the verdict, the court ordered that testator's 2004 will not be admitted to probate. Daughter filed four post-trial motions: a motion for judgment as a matter of law, a motion for relief from judgment, a motion for a new trial, and a motion for mistrial. The court denied all of these, and this appeal followed.

¶ 8. On appeal, daughter makes the following five arguments: (1) the trial court erred in applying the doctrine of suspicious circumstances because the relationship in question was between a father and daughter; (2) the trial court erred in failing to inform the jury from the outset that the burden of proof on testamentary capacity was on daughter as proponent of testator's will; (3) the

---

[1] Daughter was represented at the hearing by an associate in her counsel's law firm. There is no indication in the record that her representation was limited in any way. Thus, daughter is bound by the actions of the associate to the same extent as those of her primary counsel.

decision by the trial court not to establish which of the parties had the burden of proof denied daughter procedural due process; (4) the trial court erred when it failed to instruct the jury on the law relating to insane delusions, instead relying solely on an instruction concerning testamentary capacity; and (5) the trial court erred by failing to rule in daughter's favor on her post-trial motions.

¶ 9. We do not reach the first issue. Daughter's claim of error relates solely to the court's decision in allocating the burden of proof on undue influence. The jury rendered its verdict solely on testamentary capacity. Daughter must show that the asserted error produced prejudice and the jury relied upon the asserted error. See *Lorrain v. Ryan*, 160 Vt. 202, 209, 628 A.2d 543, 548 (1993) ("[Appellants] must show that an error in instructing the jury produced prejudice . . . . Where there are multiple theories that could support the jury's action, it is appellant's responsibility to demonstrate . . . that the jury relied on the erroneous theory."). Here, the asserted error played no part in the jury's verdict, so there could be no prejudice. See *Parizo v. Wilson*, 101 Vt. 514, 518, 144 A. 856, 858 (1929) ("The rule is well settled that a judgment will not be reversed for an error that, by the verdict, is rendered immaterial.").

¶ 10. We next consider daughter's two arguments about the burden of proof. As described above, daughter claims that the trial court erred in failing to inform the jury from the outset that the burden of proof for testamentary capacity was on daughter, an error that daughter argues denied her procedural due process. We decline to reach these issues because neither was properly preserved in the trial court.

¶ 11. The court's decision to reserve the determination of which party bore the burden of proof on testamentary capacity was initially explained to the parties at a pretrial conference. The court explained as follows: "One issue that we were going to discuss was how to address with the jury at the beginning of the trial the fact that the burden of proof is not yet established. . . . In many trials . . . the jurors will know which party has something to prove . . . . But in this case . . . they are going to hear all of the evidence first, before they find out . . . which party has the burden of proof." After this explanation, the court directly asked daughter's counsel whether she had any objection. Daughter's counsel replied, "That would be fine with us, Your Honor." Thus, when the court made the decision to reserve allocation of the burden of proof, daughter did not object to the reservation and, in fact, agreed with it.

¶ 12. Daughter also failed to properly object to the delay in deciding who bore the burden of proof on testamentary capacity when, at the start of trial, the court informed the jurors that they would be instructed on the burden of proof at the close of the evidence. Daughter's counsel expressed confusion at that time about the burden of proof for testamentary capacity, saying, "My understanding with respect to undue influence [is that] you were going to reserve that issue to determine who had the burden of proof, but I didn't understand that we might be given the burden of proving that [testator] had testamentary capacity. I would have believed that would always be on the opponent to the will." Son's attorney reminded the court that, at the pretrial conference, the parties had confirmed there were two issues on appeal, undue influence and testamentary capacity, and that he believed the proponent of a will has the burden of proof to show testamentary capacity. The court explained to daughter's attorney that the decision to reserve the burden of proof allocation as to both undue influence and testamentary capacity was consistent with what was agreed to at the pretrial conference. Daughter's

attorney made no clear objection to this decision, and simply replied, "Thank you very much," to the court's explanation.

¶ 13. Daughter's attorney eventually objected to the reservation of a determination on the allocation of the burden of proof as to testamentary capacity, but only when the court determined that the burden of proof of testamentary capacity was on daughter.[2] This objection came after daughter's counsel agreed to the reservation decision and after the jury instructions on the issue. Daughter did not claim that the reservation decision denied her due process of law.

¶ 14. We conclude that the late objection does not properly preserve the reservation issue for appeal. In addition to requiring that a party raise objections with "specificity and clarity," *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (quotation omitted), we also require that an objection be raised in a "timely manner," *Burton v. Jeremiah Beach Parker Restoration & Constr. Mgmt. Corp.*, 2010 VT 55, ¶ 6, 188 Vt. 583, 6 A.3d 38 (mem.), and "in a manner which gives the trial court a fair opportunity to rule on it." *White*, 172 Vt. at 343, 779 A.2d at 1270 (quotation omitted). Daughter's objection to the reservation of the burden of proof was not timely and failed to give the trial court an opportunity to properly consider the issue and to weigh her rea-

sons for claiming that a determination of the burden of proof should not be reserved. See *id.* at 343, 779 A.2d at 1270-71 (emphasizing purpose of preservation rule is to give original forum opportunity to decide in first instance). She did not claim during the trial that she was denied due process of law. Consequently, daughter's argument pertaining to the burden of proof as to testamentary capacity and her claim that she was denied procedural due process because of the court's handling of the burden of proof decision are waived on appeal *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230.

¶ 15. We next address daughter's claims relating to jury instructions. Daughter argues the court erred in failing to instruct the jury on insane delusions, instead relying solely on an instruction concerning testamentary capacity. We decline to reach this argument because daughter did not properly preserve it before the trial court.

¶ 16. Vermont Rule of Civil Procedure 51(b) specifically addresses the requirement of objections to jury instructions in order to preserve claims of error. It states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." To preserve an objection to jury instructions, a party must additionally renew any objection made during the charge conference after the court instructs the jury. *Venturella v. Addison-Rutland Supervisory Union*, 2010 VT 115, ¶ 5, 189 Vt. 553, 12 A.3d 558 (mem.).

¶ 17. In this case, daughter raised no objection at the trial court about the court's failure to instruct the jury on insane delusions. When the court asked daughter's attorney if he had objections upon review of the jury charge, he replied, "We do not have an exception to the charge." He made no mention that the law

---

[2] Under an agreement of the parties, son presented his evidence first. Following the son's evidence, daughter made a motion for a judgment as a matter of law on testamentary capacity. The court interrupted daughter's counsel to say that the decision had been made to delay a determination of the allocation of the burden of proof on testamentary capacity, but the court would rule that the burden was on daughter. We take this discussion as the point where daughter finally objected to the reservation of the burden of proof decision.

on insane delusions was not included in the instructions. In fact, the only instance where we find reference to "insane delusions" in the jury trial transcripts is where, on the third day of trial, daughter's attorney specifically stated, "[Son's] entire case for suspicious circumstances and undue influence seems to simply flow from the fact that he felt that his father might have insane delusions of some kind, *a doctrine that was not pled, and is not being argued.* I might argue that even a person with insane delusions, as long as they have testamentary capacity, can write a will." (Emphasis added.) Shortly afterward, daughter's attorney continued by saying, "The suggestion [here] is not [that testator had] insane delusion[s]. The suggestion is lack of testamentary capacity." Because of her failure to raise the issue below, daughter may not raise a claim of error as to jury instructions on appeal. V.R.C.P. 51(b).

¶ 18. Lastly, we address daughter's argument that the trial court erred in failing to rule in her favor on a number of post-trial motions. The motions that daughter raises on appeal include: (1) a motion for judgment as a matter of law; (2) a motion for relief from judgment; (3) a motion for a new trial; and (4) a motion requesting a mistrial. We consider each motion in turn.

¶ 19. We hold the trial court properly denied daughter's post-trial motion for judgment as a matter of law. Daughter did not make a motion for judgment as a matter of law before the submission of the case to the jury.[3] See V.R.C.P. 50(a)(2)

("Motions for judgment as a matter of law may be made at any time before submission of the case to the jury."). In the absence of such a motion, daughter's challenge to the sufficiency of the evidence is waived, *Ferrisburgh Realty Investors v Schumacher*, 2010 VT 6, ¶ 27, 187 Vt. 309, 992 A.2d 1042, and the trial court properly denied the post-verdict motion on this ground.

¶ 20. The latter three post-verdict motions all relate to daughter's claim, discussed above, that the trial court failed to allocate the burden of proof on testamentary capacity prior to trial. As we have held above, this claim — made in different forms in daughter's various arguments — was waived. Daughter could not save this claim by including it in post-verdict motions.

¶ 21. Daughter's motion for a mistrial was also moot. This motion was made in response to son's motion to dismiss because daughter failed to present the testimony of all the subscribing witnesses. Daughter sought a mistrial to enable her to present that testimony, arguing that the deficiency resulted from the trial court's failure to assign the burden of proof. The court denied son's motion, making moot daughter's motion for a mistrial. There was no reason for the trial court to rule on this moot motion.

*Affirmed.*

---

[3] Daughter tried to make such a motion, but the court cut off daughter's counsel because the court ruled that the burden of proof on testamentary capacity was on daughter. Only son had put on any evidence at this point. See *supra,* ¶ 13 n.2. Thus, daughter needed to put on evidence to carry her burden. The court stated, "I'm going to stop you at this point. You may renew this motion later." Daughter's counsel asked if the court meant, "At the close of all the evidence." The court answered, "Right." At that point, daughter put on one witness — her son. Following that testimony, the court asked, "Are there any motions?" Daughter did not make a motion for a judgment as a matter of law at that time. Viewing the record overall, we cannot conclude that daughter made a timely motion for a judgment as a matter of law.