NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 74

No. 2018-290

| | |
|---|---|
| Paul Epsom and Kristine Kelley | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| David S. Crandall and Mark Johnson | May Term, 2019 |

Robert P. Gerety, Jr., J.

Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland, for Plaintiffs-Appellants.

John D. Willey, Jr. of Boylan Associates, P.C., Springfield, for Defendant-Appellee Crandall.

Mark B. Heath and Evan J. O'Brien of Downs Rachlin Martin PLLC, Burlington, for
 Defendant-Appellee Johnson.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **CARROLL, J.**    This is a timber trespass action brought by plaintiffs against a neighboring landowner and the logger who cut plaintiffs' trees.  Plaintiffs appeal from a jury verdict in their favor, arguing that the damage award was inadequate.  Plaintiffs also claim that the jury should have found the neighbor liable for unlawful mischief and that the trial court erred in denying their claims for treble damages, additional costs, and prejudgment interest.  We affirm.

¶ 2.    The following evidence was presented at trial.  Plaintiffs Paul Epsom and Kristine Kelly reside in Pennsylvania.  Epsom is a certified arborist and owns a garden center.  In 2008, plaintiffs purchased a forty-eight-acre lot in the town of Plymouth for $165,000.  They built a

house on the property to use as a second home with the intention of eventually retiring there. In 2011, they placed the property in a current-use plan. Epsom testified that they wanted to improve the forest and intended to develop some recreational trails.

¶ 3. Defendant David Crandall lives in Vermont and Florida. He owns a four-acre lot that abuts the north and west sides of plaintiffs' land.

¶ 4. In September 2014, Crandall listed his property for sale. He hired a logger, defendant Mark Johnson, to clear the lot to make it more attractive to potential purchasers. Crandall had never had logging done on any property he owned before this project. Neither Crandall nor Johnson was aware that the law at that time required Crandall to mark the area to be logged.[1]

¶ 5. Prior to beginning work, Crandall and Johnson met at Crandall's property and walked the proposed logging area. The northern and southern boundaries of Crandall's property were well-marked. Crandall testified that he thought it would be simple for Johnson to find the eastern boundary line—i.e., the boundary between his land and plaintiffs' land—because his survey map depicted it as being 300 feet from the road. Crandall testified that he showed Johnson the survey map that day. He testified that he relied on Johnson's expertise as a logger to find the boundary.

¶ 6. Johnson denied that Crandall showed him the survey map on the day they met or told him the eastern boundary was 300 feet from the road. Johnson understood that he could cut down to a certain stream that ran through Crandall's property, and that the eastern boundary was

---

[1] In 2010, the Legislature added a section to the timber trespass statute requiring a landowner to mark the harvest unit prior to removing trees, and providing for a civil penalty of up to $1000 for failure to do so. 13 V.S.A. § 3603 (Cum. Supp. 2010). It simultaneously amended § 3606 to provide that a landowner who failed to mark the harvest unit could be liable for damages in a timber trespass action. Id. § 3606 (Cum. Supp. 2010). In 2016, the statute was amended to remove the mandatory marking requirement, the civil penalty, and the provision for a civil action against a landowner. See 2015, No. 106 (Adj. Sess.), § 1.

beyond that stream. Johnson began logging soon after his meeting with Crandall because he had an opening in his schedule and there was plenty of work to be done on the area that Crandall had identified as his property.

¶ 7. As he worked, Johnson did not observe any signs of a boundary line near the eastern edge of Crandall's property. He observed that the forest near the eastern boundary consisted mainly of maple trees of average to lower quality, as well as beech trees that bore scabbing and were diseased. He also observed old skid trails from previous logging activities as well as old stumps and downed trees. Johnson testified that when he got close to where he understood the eastern boundary to be, he asked Crandall to send him the survey map. When Johnson received the map, he realized that he had overcut onto plaintiffs' property.

¶ 8. Johnson cut thirty-nine mature trees and nineteen saplings on plaintiffs' land.[2] The mature trees consisted of seven ash, eight beech, nineteen maples, and five birch trees. Johnson sold two of the ash trees and seventeen of the maple trees to a sawmill for $734. Johnson also cut five to six cords of firewood, for which he received approximately $500 or $600.

¶ 9. After Johnson realized that he had cut plaintiffs' trees, he notified Crandall. He then called Epsom and apologized. Epsom and Johnson arranged to meet at plaintiffs' property in early October along with Epsom's forester. Johnson presented Epsom with a copy of the sawmill receipt and offered to pay Epsom the amount Johnson had received for the logs. Epsom declined. Johnson asked if there was anything else he could do, and Epsom asked him to clean up the overcut area, which Johnson did.

---

[2] The parties disputed how much land was affected by the overcutting. Plaintiffs' expert Cal Felicetti testified at trial that the area affected by the cutting was approximately two acres. However, on cross-examination, Felicetti agreed that he had stated in his deposition that the affected area was about half an acre. The exact amount of acreage affected is not relevant to the outcome of this appeal.

¶ 10.    Plaintiffs subsequently filed separate actions against Crandall and Johnson.  They sought damages against both defendants for timber trespass, common-law trespass, and unlawful mischief, and against defendant Crandall for unjust enrichment.  Crandall and Johnson filed cross-claims for indemnification against each other.  The actions were consolidated for a jury trial.

¶ 11.    The trial took place over five days.  The parties did not dispute that Johnson had cut plaintiffs' trees; the testimony focused mainly on the amount of damages.  Plaintiffs' arborist expert, Cal Felicetti, estimated the replacement value of the cut trees using the trunk formula method for appraisal of trees in the Guide for Plant Appraisal, an industry treatise.  Under this method, Felicetti took the cost of purchasing and planting a sapling species from a commercial nursery and used that to calculate the cost per square inch of diameter.  He then multiplied that amount by the size of the trunk on the lost tree to obtain a theoretical replacement cost, which he reduced by factors such as species rating, condition, location, and cost.  Using the trunk formula method, he estimated the replacement value for the trees cut on plaintiffs' land to be $189,200.  His valuations of individual trees ranged from $352 for an eight-inch beech to $25,929 for a 32-inch sugar maple.  Felicetti stated that he used the trunk formula method because of plaintiffs' stated emotional connection to the trees, but admitted his estimate of value was in "a gray zone, because the trees at the far end of the Epsom's property are probably only worth timber value."

¶ 12.    Defendants presented a much lower estimate of damages.  John Wiggin, defendants' timber evaluation expert, testified that he visited plaintiffs' property approximately one month after the trees were cut.  Based on the stumps and the surrounding trees, he estimated that the cut trees were not particularly old or large except for some of the ash trees.  He stated that most of the beech trees were of small diameter and were severely impacted by disease, making them suitable only for firewood.  Based on his observations, he estimated the mill value of the cut trees to be $1553.

4

¶ 13. The jury found Johnson liable for timber trespass but concluded that Johnson acted through mistake of fact regarding the location of the boundary. It found that Crandall did not act through mistake of fact or have a good reason to believe the trees belonged to him, and was therefore liable for the statutory penalty of $1000 for failure to mark the harvest unit. The jury also found both Johnson and Crandall liable for common-law trespass. It found that Crandall had to indemnify Johnson. It determined that plaintiffs' actual damages were $19,500. The jury found defendants not liable for unlawful mischief, unjust enrichment, or punitive damages. The court interpreted the timber trespass statute to allow only single damages against landowner Crandall and entered judgment accordingly.

¶ 14. Plaintiffs moved for the court to amend the judgment or grant a new trial, arguing that they were entitled to judgment in their favor on the unlawful mischief count and that the damages awarded by the jury were too low and not supported by the evidence. They also asked the court to reconsider its denial of treble damages and to award them prejudgment interest and additional costs. The court denied plaintiffs' motions. This appeal followed.

¶ 15. On appeal, plaintiffs raise five issues. First, they argue that the trial court erred by denying their motion for additur or a new trial because the jury's damage award of $19,500 was inadequate and not supported by the evidence. Second, plaintiffs claim the court erred by denying their motion for judgment as a matter of law or for a new trial against defendant Crandall on the unlawful mischief count. Finally, they argue that they were entitled to treble damages and additional costs under the timber trespass statute and prejudgment interest as of right. We address each argument in turn.

I. Motion for New Trial on Damages or Additur

¶ 16. Plaintiffs argue that the trial court should have granted their motion for a new trial or additur because the jury award was inadequate and unsupported by the evidence. The court rejected plaintiffs' motion on the ground that the jury could reasonably have concluded from the

5

evidence presented that the damages should be determined by the cost of planting new trees alone at an estimated cost of $500 per tree, which corresponded to the approximate cost proposed by plaintiffs' expert to plant new trees. Plaintiffs argue that the $500 per tree figure did not correspond to any of the evidence presented by their expert or the defense and failed to compensate them for the damage to the forest floor.

¶ 17. We review the trial court's decision to deny plaintiffs' motion for a new trial or additur for abuse of discretion. Shahi v. Madden, 2008 VT 25, ¶ 14, 183 Vt. 320, 949 A.2d 1022. "The law favors upholding jury verdicts." Id. Accordingly, we view the evidence "in the light most favorable to the nonmoving party." Irving v. Agency of Transp., 172 Vt. 527, 527, 768 A.2d 1286, 1288 (2001) (mem.). When reviewing the trial court's denial of a motion for a new trial or for additur on the grounds that the jury's award is unsupported by the evidence, "we need only determine whether the jury could reasonably have found its verdict for damages on the evidence before it." Brueckner v. Norwich Univ., 169 Vt. 118, 127, 730 A.2d 1086, 1094 (1999) (quotations and alterations omitted). "When damages are not disclosed in a contract or are not exactly ascertainable, the award must be 'grossly insufficient' to justify interference." Harsch Props., Inc. v. Nicholas, 2007 VT 70, ¶ 21, 182 Vt. 196, 932 A.2d 1045 (quoting Cenate v. Hunter, 115 Vt. 402, 404, 62 A.2d 645, 646 (1948)).

¶ 18. The trial court did not abuse its discretion in denying plaintiffs a new trial or additur. The jury heard conflicting evidence on the value of the trees and was not required to choose the exact damage amount offered by either party. Felicetti, plaintiffs' arborist expert, estimated the replacement cost of the trees to be $189,200 using the trunk formula method, which is typically used for very large trees. Felicetti used this method in part because plaintiffs told him they had a close personal connection to the trees. However, Felicetti admitted on cross-examination that the trunk formula method resulted in a "very high number" and that the cut trees were in a "gray area" because they were not immediately next to plaintiffs' house. He conceded that the trees at the far

end of plaintiffs' property were probably only valuable as timber. He noted that other appraisers might use a different method for calculating the value of the trees since they were further from the house. Johnson and defendants' expert Wiggin testified that the cut trees appeared to be in poor condition and were not especially large or valuable. Wiggin opined that due to their condition, they were worth only $1553 as timber. In light of this evidence, the jury could have found that the trunk formula method resulted in a disproportionately high measure of damages, particularly since plaintiffs had recently purchased their entire forty-eight-acre property for only $165,000 and the proffered damage amount exceeded that.

¶ 19. Contrary to plaintiffs' argument, there was evidence to support the jury's lower assessment of the value of the cut trees. Felicetti testified that a typical wholesale price at a nursery for a three-inch maple tree was $300 to $400. His appraisal worksheet, which was shown to the jury as a demonstrative exhibit, listed the retail cost of a three-inch sugar maple tree as $592 and a three-inch ash tree as $433. He stated that the cost of purchasing and planting ash trees could be as low as $500 each. He estimated the replacement value of some of the beech trees to be less than $500 apiece due to their diseased condition. He did not offer any testimony regarding the retail or planting costs for the birch trees. Epsom, a certified arborist, testified regarding the cost of replacement trees that "where I go to [they] are much cheaper than where [Felicetti] goes to." The jury could have concluded from this evidence that the reasonable cost of replacing the trees was roughly equivalent to their retail value at a nursery, or $500 per tree. Accordingly, the trial court did not err in denying plaintiffs' motion to increase or set aside the damage verdict.

¶ 20. Plaintiffs also claim that the jury should have awarded plaintiffs $20,000 for the mulch to restore the damaged forest floor. This claim is based on Epsom's testimony that the soil in the cut-over area had been compacted by Johnson's heavy equipment, potentially increasing the risk of erosion and making it difficult for the forest to recover. Epsom testified that mitigating the damage to the soil by applying mulch would cost $20,000. Although defendants did not present

7

any conflicting evidence on this issue, plaintiffs ultimately bore the burden of proving damages and the jury was not required to accept Epsom at his word. Given that there was little other evidence of soil damage besides Epsom's description, which was somewhat vague, it was not clearly erroneous for the jury to reject plaintiffs' claim of $20,000 in damages for the forest floor.

¶ 21. Plaintiffs assert that the jury's award of damages was the result of a compromise in order to conclude deliberations. A damage verdict may be vacated if there is evidence that the jury compromised. Grazulis v. Curtis, 149 Vt. 371, 374, 543 A.2d 1324, 1326 (1988). "A compromised verdict results when some jurors surrender conscientious convictions on one issue in return for a similar surrender by other jurors on another issue." Fournier v. Estate of Loiselle, 132 Vt. 601, 602, 326 A.2d 155, 156 (1974). We have explained that "[t]he threshold determination in considering whether a verdict has been compromised . . . is whether the jury could reasonably have calculated the damages awarded on the evidence presented." Id. As discussed above, the jury was presented with evidence from which it could reasonably have concluded that plaintiffs' actual damages were $500 per tree for a total of $19,500. Although this amount is far less than plaintiffs requested, the award "was the result of seriously conflicting testimony as to the extent of [plaintiffs'] damages." Id. at 603, 326 A.2d at 156. We see no evidence that the verdict was based on prejudice or was the result of a compromise.[3] Accordingly, we affirm the trial court's denial of plaintiffs' motion for a new trial on damages.

---

[3] In their reply brief, plaintiffs argue that the jury verdict must have been the result of compromise because during closing argument, defendant Johnson's attorney appealed to the prejudices of the jury by portraying plaintiffs as newcomers to Vermont who did not appreciate local values and culture and were attempting to take advantage of their neighbors. "We agree that appeals to regional bias are inconsistent with notions of impartial justice, but we have also been hesitant in the past to overturn a jury verdict based on the arguments of counsel." Brown v. Roadway Express, Inc., 169 Vt. 633, 635, 740 A.2d 352, 356 (1999) (mem.). Given our conclusion that the jury verdict was reasonably supported by evidence, and the fact that plaintiffs did not object at trial or raise this argument in their opening brief, we decline to address it here. See Agency of Nat. Res. v. Glens Falls Ins. Co., 169 Vt. 426, 435, 736 A.2d 768, 774 (1999) (declining to address issue that had not been raised at trial or in opening brief).

II. Motion for Judgment as a Matter of Law or a New Trial on Unlawful Mischief Claim

¶ 22.   Plaintiffs claim that the trial court erred in denying their motion for judgment as a matter of law or a new trial on the unlawful mischief count against defendant Crandall.  Plaintiffs argue that it was inconsistent for the jury to find Crandall liable for timber trespass and common-law trespass but not unlawful mischief.

¶ 23.   We first note that plaintiffs framed their motion in part as one for judgment as a matter of law.  This form of relief was unavailable because plaintiffs never moved for judgment in their favor on the unlawful mischief claim before the case was submitted to the jury.[4]  Vermont Rule of Civil Procedure 50 requires a party to move for judgment as a matter of law before the case is submitted to the jury, and if the motion is denied, to renew the motion after trial to preserve the issue for appeal.  See V.R.C.P. 50(a) ("Motions for judgment as a matter of law may be made at any time before submission of the case to the jury."); id. 50(b) ("Renewal of the motion is necessary to appeal from a denial of or a failure to grant a motion for judgment as a matter of law."); In re Estate of Tucker, 2011 VT 54, ¶ 19, 190 Vt. 530, 25 A.3d 547 (mem.) (affirming denial of post-trial Rule 50 motion where party failed to make motion before case was submitted to jury).

¶ 24.   However, because plaintiffs alternatively requested a new trial against Crandall on the unlawful mischief claim, a motion which was proper under the circumstances, we will review the court's decision using the standard of review applicable to Rule 59 motions.  That is, we assess whether the trial court abused its discretion, viewing the evidence in the light most favorable to the nonmoving party.  Shahi, 2008 VT 25, ¶ 14; Weeks v. Burnor, 132 Vt. 603, 606, 326 A.2d 138, 139 (1974) ("A motion for a new trial on the ground that the weight of the evidence fails to support the verdict is addressed to the discretion of the trial court.").  Although our review is

---

[4]  The trial court did not address this procedural issue because it concluded that, even assuming the argument was properly raised, the jury's verdict was not internally inconsistent.

deferential to the jury's verdict and the court's decision to deny a trial, we will not uphold a verdict that is internally inconsistent. Smedberg v. Detlef's Custodial Serv., Inc., 2007 VT 99, ¶ 12, 182 Vt. 349, 940 A.2d 674.

¶ 25. The jury was given a special verdict form that required it to make findings with regard to each claim against defendants. The jury found that Crandall was liable for timber trespass for failing to mark the harvest unit and did not act through mistake of fact or have a good reason to believe that the trees belonged to him. The instructions to the jury stated that it could find Crandall liable for common-law trespass if it found Johnson cut the trees pursuant to a specific instruction by Crandall or that Crandall's instructions regarding the harvest area were ambiguous and Johnson reasonably believed the trees he cut were authorized by Crandall's instructions. The jury found Crandall liable for common-law trespass. However, it did not find Crandall liable for unlawful mischief. Plaintiffs claim that because the jury found that Crandall instructed Johnson to cut trees that were on plaintiffs' land and did not fail to mark the harvest unit through mistake of fact, it was required to find that Crandall intended for Johnson to cut plaintiffs' trees, thereby making him liable for unlawful mischief.

¶ 26. The jury's decision in Crandall's favor on plaintiffs' unlawful mischief claim is supported by the evidence and is not inconsistent with its other findings. In order to hold Crandall liable for unlawful mischief, plaintiffs had to prove that he intended to damage their property. See 13 V.S.A. § 3701(a), (f) (defining crime of unlawful mischief as "[a] person who, with intent to damage property, and having no right to do so or any reasonable ground to believe that he or she has such a right, does any damage to any property," and providing for civil action for damages against such person). The jury's determination that Crandall's failure to mark the harvest unit was not the result of a mistake or belief that he had a legal right to cut on plaintiffs' land is not equivalent to a finding that he intended to cut trees on plaintiffs' land. Nor does the jury's finding that Crandall instructed Johnson to cut the trees in the disputed area necessarily mean that Crandall

10

intended to cut <u>plaintiffs'</u> trees. The jury could have concluded from the evidence presented that Crandall misunderstood his boundary line or was careless in failing to identify and mark his boundary line before having Johnson log the area, but that he did not actually intend to have plaintiffs' trees cut. Contrary to plaintiffs' suggestion, the jury's findings against Crandall on the timber trespass and common-law trespass claims do not automatically make Crandall liable for unlawful mischief. See <u>LeBlanc v. Snelgrove</u>, 2015 VT 112, ¶ 58, 200 Vt. 570, 133 A.3d 361 (explaining that jury's finding in connection with trespass claim that neighbor intentionally entered land was not equivalent to finding that neighbor intended to damage property, as required to prove unlawful mischief claim); cf. <u>Evans v. Cote</u>, 2014 VT 104, ¶ 12, 197 Vt. 523, 529, 107 A.3d 911 (affirming unlawful mischief verdict against defendant under 13 V.S.A. § 3701(c) where court found defendant intentionally pushed dead tree to ground). Plaintiffs retained the burden of proof on the element of intent and the jury could reasonably have concluded that they failed to meet this burden. The trial court therefore did not abuse its discretion by denying plaintiffs' motion for a new trial on the unlawful mischief claim against Crandall.

### III. Motion for Treble Damages

¶ 27. Plaintiffs claim next that the trial court erred in declining to award them treble damages against defendant Crandall under the timber trespass statute, 13 V.S.A. § 3606. Based on the plain language of the statute and the context and structure of the statute as a whole, we conclude that the trial court correctly awarded plaintiffs single damages in this case.

¶ 28. Our review of questions of statutory interpretation, as with other issues of law, is de novo. <u>In re Treetop Dev. Co. Act 250 Dev.</u>, 2016 VT 20, ¶ 9, 201 Vt. 532, 143 A.3d 1086. "Our paramount goal in statutory construction is to give effect to the Legislature's intent." <u>Burr & Burton Seminary v. Town of Manchester</u>, 172 Vt. 433, 436, 782 A.2d 1149, 1152 (2001). "The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear." <u>In re Bennington Sch., Inc.</u>, 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332

11

(mem.). We presume the Legislature intended the plain, ordinary meaning of the language used. Brennan v. Town of Colchester, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999).

¶ 29. The version of the timber trespass statute in effect at the time relevant to this case provided that if a "person" cuts down trees belonging to another, "the party injured may recover of such person, in an action on this statute, treble damages or for each tree the same amount that would be assessed as a civil penalty under section 3602 of this title, whichever is greater."[5] 13 V.S.A. § 3606 (Cum. Supp. 2010) (emphasis added). However, if the defendant showed at trial that he or she acted through mistake or under a good-faith belief that he or she had a right to cut down the trees, the injured party was entitled to single damages only. Id. The statute went on to state that if a person cut down trees belonging to another person "due to the failure of the landowner or the landowner's agent to mark the harvest unit properly, as required under section 3603 of this title, a cause of action for damages may be brought against the landowner." Id.

¶ 30. The above language makes clear that treble damages are available only against the person who actually cut the trees. Prior to the 2010 amendment to § 3606, an injured party could not recover damages for timber trespass from a landowner at all unless the landowner was the person who cut the trees. See Masters v. Stone, 134 Vt. 529, 531, 367 A.2d 686, 688 (1976) (holding, under pre-2010 version of 13 V.S.A. § 3606, that statute only authorized recovery of damages from person who cut trees and not adjoining landowner who hired logger, because landowner was "only secondarily vicariously involved"). By authorizing "a cause of action for damages" against a landowner for failure to mark the harvest unit, it is plain that the Legislature intended to provide for single damages only. 13 V.S.A. § 3606 (Cum. Supp. 2010). The Legislature knew how to authorize treble damages, as evidenced by the first sentence of the statute. Had it meant to extend this extra liability to landowners, it could have used the phrase "a cause of

---

[5] Here, plaintiffs' expert calculated the civil penalty to be $16,900.

action for treble damages." However, it did not do so, and we presume it chose its words advisedly. See Stowell v. Action Moving & Storage, Inc., 2007 VT 46, ¶ 31, 182 Vt. 98, 933 A.2d 1128 ("[A] review of Vermont statutes reveals that when the Legislature wishes to grant treble damages, as plaintiff urges it did here, it does so explicitly."); Robes v. Town of Hartford, 161 Vt. 187, 193, 636 A.2d 342, 347 (1993) ("If the legislature had intended the payment of 'current expenses,' then it would have used the more specific term rather than the general term 'expenses.' ").

¶ 31. Our interpretation is consistent with the statute as a whole, which recognizes a hierarchy of intent and consequent liability. Treble damages are designed to punish persons who intentionally cut trees belonging to others and to deter such wrongdoing in the future. See State v. Singer, 2006 VT 46, ¶ 11, 180 Vt. 104, 904 A.2d 1184 (explaining that in addition to compensating owner of trees, treble-damages provision is "punitive" measure that "serves to deter intentional trespass and the wrongful taking of another's timber"). The statute only permits single damages, however, where a person cuts trees by mistake or a landowner fails to clearly mark boundaries. In providing for a lesser liability in these situations, the statute recognizes the less-culpable mental state of the perpetrator while still compensating the injured party for his or her loss.

¶ 32. We also find it significant that under the 2010 version of the timber trespass statute, a person who intentionally cut trees could be held liable for either treble damages or a civil penalty, while the injured party could recover both damages and the civil penalty from a landowner for failure to mark the harvest unit. See 13 V.S.A. §§ 3603, 3606 (Cum. Supp. 2010). If, as plaintiffs argue, "a cause of action for damages" authorized treble damages, a negligent landowner could potentially face greater liability than the person who intentionally cut the injured party's trees. Absent more specific language to the contrary, we doubt the Legislature intended to expose landowners to greater liability than persons who commit intentional torts. See Rhodes v. Town of

Georgia, 166 Vt. 153, 157, 688 A.2d 1309, 1311 (1997) ("We have long held that statutes should not be construed to produce absurd or illogical consequences.").

¶ 33. Here, because Crandall's liability for timber trespass was based solely on his failure to mark the harvest unit, the trial court did not err in declining to award treble damages against Crandall.

IV. Additional Costs

¶ 34. Plaintiffs next argue that the court should have granted their request for costs beyond those authorized by Vermont Rule of Civil Procedure 54. The court awarded plaintiffs their filing fees, deposition costs, and mediation fees, but denied their request for all other costs, including copying, postage, survey fees, and expert fees. Plaintiffs claim that they were entitled to recover these additional costs under § 3606, which provides that if the defendant in a timber trespass case establishes that he believed the trees belonged to him or that he had a legal right to cut the trees, "the plaintiff shall recover single damages only, with costs." 13 V.S.A. § 3606(b). The statute defines damages but not costs.[6] Id. § 3606(c). Plaintiffs argue that by including the phrase "with costs" in the timber trespass statute, the Legislature must have intended to authorize a broader range of costs than the costs ordinarily available under Rule 54.

¶ 35. We disagree. As noted above, when interpreting a statute we presume the Legislature intended the plain and ordinary meaning of the language it chose to use. Brennan, 169 Vt. at 177, 730 A.2d at 603. The term "costs" has a plain and well-established meaning in the context of a civil action for damages. Rule 54 provides that "[c]osts other than attorneys' fees shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs." V.R.C.P. 54(d)(1). By statute, the prevailing party is entitled to recover filing fees, service fees, and "witness fees" of $30 per day for attendance

---

[6] The previous version of § 3606 contained identical language. See 13 V.S.A. § 3606 (Cum. Supp. 2010).

14

before a court or at a deposition, plus mileage for in-state travel.  32 V.S.A. §§ 1471(a), 1551, 1553.  Additionally, the court may in its discretion award deposition fees and mediation fees as costs.  See V.R.C.P. 54(g) (permitting court to award costs incurred in taking of reasonably necessary depositions); V.R.C.P. 16.3(c)(1)(C) (giving court discretion to award mediation fees to prevailing party).

¶ 36.    We presume the Legislature was aware of this common meaning when it authorized "costs" in § 3606.  By including the phrase "with costs" after "single damages only," the Legislature was making clear that these normal costs were still available to a prevailing plaintiff in a timber trespass action even if the plaintiff failed to prove intentional trespass and therefore could not recover treble damages.  If the Legislature had meant to authorize a broader range of costs in such a scenario, it could easily have specified that the prevailing party was entitled to "all costs," but it did not do so.  Nothing in the language or the purpose of the statute suggests that the Legislature intended the prevailing party in a timber trespass action to recover costs other than those normally awarded.  The trial court therefore did not err in denying plaintiffs' request for additional costs.

## V. Prejudgment Interest

¶ 37.    Finally, plaintiffs argue that the trial court should have awarded them prejudgment interest as of right.  They sought $8262.49 in interest on the $19,500 jury award against Crandall and Johnson and $425.37 in interest on the $1,000 award against Crandall.  These amounts represented twelve percent interest for 1289 days, the time between the date of the mill receipt and the date of entry of judgment.  See 9 V.S.A. § 41a(a) (setting statutory rate of interest).  The trial court denied the motion on the ground that plaintiffs were not entitled to prejudgment interest because damages were not readily ascertainable.

¶ 38.    "Prejudgment interest is awarded as of right when damages are liquidated or reasonably certain."  EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 36, 181 Vt. 513, 928 A.2d 497.

15

The rationale for this rule is that "the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." Agency of Nat. Res. v. Glens Falls Ins. Co., 169 Vt. 426, 435, 736 A.2d 768, 774 (1999) (quoting Johnson v. Pearson Agri–Sys., Inc., 350 N.W.2d 127, 130 (Wis. 1984)).  The court retains discretion to award prejudgment interest in cases where damages were not readily determinable "to avoid injustice."  Estate of Fleming v. Nicholson, 168 Vt. 495, 500, 724 A.2d 1026, 1029 (1998).

¶ 39.   Plaintiffs argue that they are entitled to prejudgment interest as of right because the civil penalty table contained in the timber trespass statute provided a liquidated measure of damages.  See 13 V.S.A. § 3602.  Plaintiffs argue that defendants knew they were liable for at least $23,700 by October 20, 2014, when plaintiffs presented defendants with their forester's initial calculation of the civil penalty.[7]

¶ 40.   We agree with the trial court that prejudgment interest was not mandatory in this case.  Plaintiffs and defendants presented conflicting expert testimony about the value of the cut trees.  Plaintiffs' arborist expert testified that the trees were worth $189,200.  Defendants' expert estimated that the cut trees were worth $1533 as lumber.  The amount of damages therefore was not reasonably certain.  Furthermore, the parties dispute how the jury could have calculated its damage award.  See Winey v. William E. Dailey, Inc., 161 Vt. 129, 141, 636 A.2d 744, 752 (1993) (affirming denial of prejudgment interest where parties presented conflicting expert testimony on damages and disputed how jury arrived at damages awarded).

¶ 41.   Plaintiffs' reliance on the statutory civil penalty table is misplaced.  Both the statute and our case law recognize that there are many acceptable methods for valuing trees in a timber trespass action.  See Singer, 2006 VT 46, ¶ 10 (explaining that damages may require more than

---

[7] Plaintiffs' forester testified that he initially calculated the civil penalty for the lost trees to be $23,700.  However, he misunderstood where the property line was and his estimate included eight stumps that were not actually on plaintiffs' property.  Epsom testified that the penalty calculation was later adjusted to $16,900.

repayment for trees cut, and may include injuries to land and lost comfort and aesthetic value); Pion v. Bean, 2003 VT 79, ¶ 30, 176 Vt. 1, 833 A.2d 1248 (affirming damages calculated based on replacement value of lost trees); O'Brien v. Dewey, 120 Vt. 340, 350, 143 A.2d 130, 135-36 (1958) (holding that damages could be measured by difference between value of land before trees were cut and value after cutting). The statute itself provides that a tree owner who is entitled to damages under § 3606 may assess the value of the timber based on the kind, condition, location, and use of the cut timber, or may use the statutory table provided. 13 V.S.A. § 3602. The table provides a range of values for cut trees depending on their stump diameter or diameter at breast height. Id. Here, the parties disputed the number of cut trees and their values. Indeed, plaintiffs' claim that damages were readily determinable in October 2014 is belied by Epsom's testimony that the civil penalty could range from $16,900 based on diameter at breast height to $23,000 if calculated using stump diameters. Their claim is further undermined by evidence that the civil penalty originally calculated by plaintiffs' forester turned out to be too high because the exact location of the plaintiffs' property line was unclear. Thus, even under the civil penalty table, the value of the trees was not readily ascertainable. The court did not abuse its discretion by declining to award prejudgment interest in this case.

¶ 42. For the foregoing reasons, we affirm the verdict below and the trial court's denial of plaintiffs' post-trial motions.

Affirmed.

FOR THE COURT:

_____
Associate Justice

17