## Brett Green b/n/f Richard Green, et al. v. Sherburne Corporation

[403 A.2d 278]

No. 175-78

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed June 5, 1979

*Burgess and Normand, Ltd.*, Montpelier, for Plaintiffs.

*Allan R. Keyes* and *John J. Zawistoski* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant.

**Barney, C.J.** The plaintiff Brett Green was hurt while skiing on defendant's ski slopes in 1975. He was then nine years old and his proficiency, according to the testimony, ranged between intermediate and advanced. His injury came about when he collided with a utility pole on what is called the "East Glade" trail. The pole was unpadded and is part of a line of such poles carrying communications lines as well as power to the defendant's ski lifts.

On trial, the jury found the plaintiff Brett Green 51% negligent and the defendant 49% negligent, under the requirements of our comparative negligence statute. 12 V.S.A. § 1036. A defendant's verdict was, therefore, mandated, and duly returned. It must be kept in mind that the cause of action in this case arose prior to the enactment of 12 V.S.A. § 1037 relating to the burden of sports participants in connection with inherent risks of those sports, even though trial and verdict came after the effective date of the legislation.

The plaintiffs brief a single issue, claiming that the trial court failed to properly charge the jury as to the standard of care owed by the operator of a ski area to its patrons. The defendant, in response, argues that the error now claimed in the charge was not raised below, but that, in any event, the charge correctly stated the law. Moreover, says the defendant, since the jury found the defendant, as well as the infant plaintiff, negligent, any claimed error in defining the standard of care was harmless.

Specifically, the plaintiffs complained, at trial, that the charge to the jury referred to the duty of the defendant as one of "ordinary" care, rather than what the plaintiffs contend is a "higher" standard relating to a business visitor or invitee. In their brief, the plaintiffs seek to enlarge the issue raised below by here raising the issue as to whether a power utility pole was an obvious and necessary danger within the area of risk assumed by a skier.

The trial court charged, in accordance with the law so recently set out in *Sunday* v. *Stratton Corp.*, 136 Vt. 293, 390 A.2d 398 (1978), that there was no duty to warn concerning dangers inhering in the sport of skiing. There is, likewise, as stated in the *Sunday* case, no duty to extinguish such dangers. The trial court specifically included the utility pole as an obvious, observable obstacle, rather than as a hidden or latent danger. To this aspect of the charge no exception was taken. Whatever the reason, which certainly may embrace the notion that that charge was in fact correct, the issue was not challenged below, and is unavailable here. V.R.C.P. 51(b); *Means* v. *Osborne*, 134 Vt. 164, 167, 352 A.2d 697 (1976).

312

■ Turning to the exceptions taken to the charge, the most striking impression derives from the completeness with which the law expressed in the plaintiffs' requests was expressly spelled out in the language of the charge. It has been the law of Vermont for many years that the standard of conduct needed to discharge a duty of care in any given situation was measured in terms of the avoidance of reasonably foreseeable risks to the person to whom such duty is owed. *LaFaso* v. *LaFaso*, 126 Vt. 90, 93, 223 A.2d 814 (1966). As the *LaFaso* case points out at page 94, the requirements of this prudent man rule vary with the circumstances. The duty of care increases commensurably with the enlargement of the risk foreseeably involved in the operation undertaken. *Forcier* v. *Grand Union Stores, Inc.*, 128 Vt. 389, 394, 264 A.2d 796 (1970). All this was expressed to the jury in the charge.

■ In giving to the jury the law to be applied in this case, the trial court made reference to negligence as being the "want or lack of ordinary care." This, say the plaintiffs, so minimizes the duty of the defendant as to be reversible error. The short answer may be that, no matter what may be said about the use of the word "ordinary," the jury did in fact find the defendant negligent, leaving little for the plaintiff to complain about. Moreover, the trial court quite impartially ascribed to the plaintiff Brett Green a duty toward his own safety defined as one of "ordinary care" in the same charge to the jury.

Even the most cursory reading of our cases reveals that the words "ordinary," "reasonable," and "due" are often interchanged as descriptive of the kind of care required to avoid a charge of negligence. See, e.g., *Largess* v. *Tatem*, 130 Vt. 271, 276–78, 291 A.2d 398 (1972), where all three expressions are used. As is noted in *Sorrell* v. *White*, 103 Vt. 277, 281, 153 A. 359 (1931), the notion of descriptive "degrees" of negligence, such as "ordinary," "gross" and "wilful," was not part of our common law, but was imported by enactment of the so-called guest passenger statute, No. 78 of the Acts of 1929. In 1970 that statute, then 23 V.S.A. § 1491, was repealed. The attempt to fashion such terms into definitions effective at law did not persist. See *Langdon-Davies* v. *Stalbird*, 122 Vt.

56, 163 A.2d 873 (1960). The phraseology occasionally still echoes, but since it was so ineffective as a definition of duty, we cannot agree that the use of the word "ordinary" in the presence of soundly defined tests for the duty of care owed to this plaintiff detracted in the least degree from the charge. There is no error.

*Judgment affirmed.*