# Derek & Patricia Lorrain v. Kevin & Elaine Ryan

[628 A.2d 543]

No. 92-238

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 16, 1993

*E. William Leckerling* and *Pamela J. Fitzgerald* of *Lisman & Lisman*, Burlington, for Plaintiffs-Appellants.

*Richard H. Wadhams, Jr.*, of *Pierson, Wadhams, Quinn & Yates*, Burlington, for Defendants-Appellees.

**Dooley, J.** Plaintiffs Derek and Patricia Lorrain appeal the rulings of the Chittenden Superior Court on two post-judgment motions. The trial court (1) denied plaintiffs' motion for a new trial on the issue of damages, in which plaintiffs argued that defendants failed to produce sufficient evidence for the jury to

apportion damages and that the award of damages was grossly inadequate; and (2) granted defendants' motion for a judgment notwithstanding the verdict, in which defendants asserted that a damage award for loss of consortium was barred by the exclusivity provision of the workers' compensation statute. We affirm the denial of plaintiffs' motion for a new trial and reverse the grant of defendants' motion for a judgment notwithstanding the verdict.

## I.

Plaintiff Derek Lorrain was an employee of Derek Lorrain Carpet Installers, Inc., a business he owned and operated. On July 16, 1985, while working at the home of defendants Kevin and Elaine Ryan, he carried a roll of vinyl down a flight of stairs leading off defendants' raised deck. When one of the steps snapped, he fell and suffered an injury to his cervical spine. Plaintiff underwent extensive medical treatment, culminating in March 1991 in diskectomy and spinal fusion surgery. Plaintiffs filed suit, alleging that defendants' negligence in maintaining their property was the cause of the accident and all of plaintiffs' injuries. The suit included a claim for loss of consortium by Patricia Lorrain.

The case was tried before a jury, and the medical testimony offered was extensive and conflicting. Plaintiff's general physician and his orthopedic surgeon both testified that plaintiff's disabilities were due to the 1985 accident, not a preexisting condition. The general physician treated plaintiff for neck pains on the day of the accident and numerous times thereafter. Although evidence was presented that plaintiff's condition was "much improved" and had "stabilized" in the months following the accident, plaintiff periodically returned for neck treatment. The physician referred plaintiff to the orthopedic surgeon in October of 1990, attributing the complaints of neck pain to "a continuation of the July [1985] accident that was never resolved." The surgeon testified that his treatment of plaintiff, including the 1991 surgery, stemmed from the 1985 accident.

The general physician had also treated plaintiff several times for neck and arm pain in the six years preceding the accident, and twice referred plaintiff to specialists. The first was to a neurologist, who confirmed the absence of nerve damage; the sec-

ond was to a specialist in the cervical spine. X-rays taken in spring of 1984 by an assistant to the cervical spine specialist revealed the presence of degenerative arthritis in plaintiff's neck, although several weeks later the assistant noted that plaintiff's range of motion was normal and the muscular strain was resolved. The general physician noted that he had not seen plaintiff for any neck-related complaints for more than a year prior to the accident, and both he and the orthopedic surgeon testified that the degenerative condition shown in the x-rays did not necessarily indicate that plaintiff's neck problems would continue.

The general physician testified that the medical bills plaintiff presented, totaling over $20,000, all resulted from the accident. Plaintiffs also presented an economist who testified that plaintiff will lose future earnings, the present value of which was $300,000. Defendants disputed this figure.

Defendants introduced the testimony of another orthopedic surgeon who examined plaintiff prior to and after the 1991 surgery, and reviewed plaintiff's medical records dating back to 1980. Defendants' expert testified that plaintiff's disabilities were at least partially attributable to a preexisting degenerative arthritis of the cervical spine. He stated that plaintiff's medical records established a natural progression of the degenerative condition, which only stops at death. He also noted that plaintiff had suffered at least three minor injuries within approximately one year after the 1985 accident. Defendants' expert testified that the 1985 accident caused "an increase in symptoms" that subsequently subsided, a diagnosis supported by an August 1986 note from plaintiff's physical therapist stating that the neck injury had stabilized. In the opinion of defendants' expert, most of the treatments, including the 1991 operation, were necessitated by the continued progression of the degenerative arthritis, not the subject accident.

On February 19, 1992, the jury found that defendants' negligence proximately caused the 1985 accident and awarded damages in the amount of $8,610.33, including $2,298 for medical bills and $2,000 to Patricia Lorrain for loss of consortium. Defendants moved for a judgment notwithstanding the verdict on the loss of consortium claim, contending that it was barred by 21 V.S.A. § 622, the exclusivity provision of the workers' com-

pensation statute. The trial court granted defendants' motion, striking the $2,000 award, and denied plaintiffs' motion for a new trial on the issue of damages.

## II.

Plaintiffs assert that the trial court erred in failing to grant them a new trial on the issue of damages for two reasons: defendants produced insufficient evidence for the jury to apportion damages, and the jury award was grossly inadequate.

## A.

Plaintiffs' first argument relates to apportionment of damages between those caused by the accident and those attributable to other causes. In its charge, the trial court instructed the jury on apportionment of damages in accordance with the principles set out in §§ 433A and 433B of the Restatement (Second) of Torts. These principles apply "whenever two or more causes have combined to bring about harm to the plaintiff, and each has been a substantial factor in producing the harm." Restatement (Second) of Torts § 433A comment a (1965). Consistent with these principles, the trial court charged the jury:

A plaintiff's recovery for damages caused by a defendant's wrongful act may not be proportionately reduced because of a preexisting weakness or susceptibility to injury such as an arthritic condition or weakness caused by a previous injury. However, there are two exceptions to the general rule. First, when a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused. The burden of proof is on the Defendants to prove the extent of the damages which were caused by the preexisting condition. Second, when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of subsequent injury. Again, the burden of proof in such cases is on the defendant to prove the extent of the damages that the preexisting condition would inevitably have caused.

Plaintiffs do not challenge the charge as inaccurate. Instead, they assert that the jury apportioned damages by awarding

them less than their full damages. Plaintiffs argue that the court should not have allowed the jury to apportion damages because defendants did not produce sufficient medical evidence to support apportionment.

■ Assuming plaintiffs are correct that there was insufficient evidence to apportion damages, they are not entitled to a new trial on damages for two reasons. First, although they claim to challenge the sufficiency of the evidence to support the damage award, they really challenge the trial court's decision to charge that damages could be apportioned. Plaintiffs, however, have failed to show that they objected to the charge below following its delivery.[1] See V.R.C.P. 51(b) (party may not assign error to an instruction unless an objection is made following the charge). Failure to make an objection to the charge is a waiver that precludes raising the issue on appeal. See *O'Brien v. Island Corp.*, 157 Vt. 135, 141, 596 A.2d 1295, 1298 (1991); *Green v. Sherburne Corp.*, 137 Vt. 310, 311, 403 A.2d 278, 279–80 (1979).

Second, the jury verdict can be explained by an alternative theory of damages that does not involve apportionment of damages. Defendants' expert testified that the accident resulted in only a temporary increase in plaintiff's symptoms, and that plaintiff's continuing physical problems were due solely to the degenerative condition, which he described as permanent and likely to worsen over time. Other evidence indicated that the increased symptoms caused by the July 1985 accident had subsided by August 1986. The jury award covered all of the medical expenses incurred during the July 1985 to August 1986 period, and none thereafter. Thus, the jury apparently concluded that 100 percent of plaintiff's damages incurred in the thirteen-month period were attributable to the accident and all damages incurred after August 1986 were attributable to the preexisting condition or later accidents.

---

[1] Plaintiffs have made no claim that they objected to the jury instructions. Further, they failed to have the proceedings following the charge to the jury transcribed. It is their burden to produce an adequate record to support their points on appeal. See *In re S.B.L.*, 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988). We will not assume there was an objection in the absence of a record demonstrating one.

Plaintiff was awarded damages for medical expenses, pain and suffering, mental anguish, loss of enjoyment of daily activities, and lost earnings to August 1986. The jury awarded plaintiff no damages whatsoever for future lost earning capacity, future pain and suffering, or future general disability. It is clear that the jury concluded that the disability plaintiff suffered as a result of defendants' negligence was merely temporary, and did not create or substantially contribute to the continuing medical problems plaintiff experienced.

This result does not implicate the concept of apportionment described by § 433A of the Restatement. As set out above, apportionment applies when two or more causes combine to bring about plaintiff's harm. Here, defendants argued, and the jury found, that only one cause produced plaintiff's harm. Before August of 1986, the cause was this accident; thereafter, it was a different cause. This determination is fully consistent with our law. See *Woodcock's Adm'r v. Hallock*, 98 Vt. 284, 290, 127 A. 380, 382 (1925) (once negligence is established, liability attaches to "all the injurious consequences that flow [therefrom] until . . . the force set in motion by the negligent act has so far spent itself as to be too small for the law's notice"); Restatement (Second) of Torts § 434 (jury's responsibility to determine whether defendant's conduct was a substantial factor in causing plaintiff's harm).

Contrary to plaintiffs' contention, the theory accepted by the jury was supported by the evidence. Although defendants' expert testified that he was unable to separate precisely the harm caused by the accident from the harm caused by the preexisting condition, he was clear in his opinion that the accident produced only a temporary increase in symptoms. The jury was entitled to accept the evidence that, despite at least two other back or neck injuries in the interim, plaintiff's condition had resolved by August 1986. Thus, the jury reasonably could have taken the expert's testimony on the divisibility of cause to refer to the period from the date of the accident through August 1986, for which full damages were awarded. The expert medical testimony and other evidence was sufficiently informative for the jury to decide the relatively direct question of whether or when plaintiff recovered from the harm inflicted by the accident. See *Largess v. Tatem*, 130 Vt. 271, 278–79, 291 A.2d 398, 403 (1972)

(sufficient expert testimony required for jury to answer scientific or technical questions of fact).

This is not an instance where the jury had to resort to the sort of pure speculation disapproved by this Court in *Howley v. Kantor*, 105 Vt. 128, 133–34, 163 A. 628, 631 (1933). The record reveals that the parties' expert witnesses presented the jury with sharply conflicting testimony regarding the cause of plaintiff's disability. It is the province of the jury to decide on which evidence it will rely in awarding damages. "The weight of the evidence and the witnesses' credibility are for the jury, and, on appeal, all conflicts are to be resolved against the excepting party." *Brunelle v. Coffey*, 128 Vt. 367, 373, 264 A.2d 782, 785 (1970).

Plaintiffs must show that an error in instructing the jury produced prejudice. *Silva v. Stevens*, 156 Vt. 94, 108, 589 A.2d 852, 860 (1991). Where there are multiple theories that could support the jury's action, it is appellant's responsibility to demonstrate either that all theories are erroneous or that the jury relied on the erroneous theory. *Contractor's Crane Serv. v. Vermont Whey Abatement Auth.*, 147 Vt. 441, 446, 519 A.2d 1166, 1171 (1986). Here, the record supports the conclusion that the jury relied on the correct theory, not the theory plaintiffs argue is erroneous.

### B.

Plaintiffs' second ground for a new trial on damages is that the jury damage award was grossly inadequate. In considering this question, we must consider the evidence "in an aspect favorable to the amount of damage found by the jury and approved by the trial court." *Quesnel v. Raleigh*, 128 Vt. 95, 97, 258 A.2d 840, 842 (1969). We need only determine "whether the jury could reasonably have found its verdict for damages on the evidence before it." *Brunelle v. Coffey*, 128 Vt. at 370, 264 A.2d at 784. "[F]irst the jury, and then the court in ruling on the motion to set aside, have the liberty of broad discretionary judgment." *Kerr v. Rollins*, 128 Vt. 507, 510, 266 A.2d 804, 806 (1970). Further, "'we will not interfere [with the award] unless it appears that the jury's determination is so small that it plainly indicates the award was the product of prejudice or

other misguidance which undermines its validity as a verdict.'" *Fournier v. Estate of Loiselle*, 132 Vt. 601, 602, 326 A.2d 155, 156 (1974) (quoting *Quesnel v. Raleigh*, 128 Vt. at 100, 258 A.2d at 843).

■ The jury had reasonable grounds for calculating the amount of damages it awarded. Although the total amount is far below that which plaintiffs requested, the award is "the result of seriously conflicting testimony as to the extent of the plaintiff's damages," where the jury chose to believe defendants' evidence. *Id.* at 603, 326 A.2d at 156–57. There is no evidence of improper compromise. The court did not err in denying plaintiffs' motion for a new trial on damages.

### III.

Plaintiffs also allege error in the trial court's grant of defendants' motion for judgment notwithstanding the verdict on Patricia Lorrain's loss-of-consortium claim. This issue arises because Derek Lorrain was entitled to receive workers' compensation from the carrier for Derek Lorrain Carpet Installers, Inc.[2] As a result, two statutes apply that bear on plaintiffs' right to sue defendants.

■ The first is 21 V.S.A. § 622, the exclusive remedy provision of the workers' compensation statute:

> The rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

If this were the only relevant statute, neither plaintiff could sue because the availability of workers' compensation would cut off all other remedies of the "employee [and] . . . dependents or next of kin." The exclusivity provision, however, is tempered by § 624(a), which states, in part:

---

[2] Derek Lorrain received compensation from Aetna Casualty and Surety Co., which entered an appearance pursuant to 21 V.S.A. § 624(a) seeking reimbursement for compensation paid as set forth in 21 V.S.A. § 624(e).

> Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability in some person other than the employer . . . the acceptance of compensation benefits . . . shall not act as an election of remedies, but the injured employee or his personal representative may also proceed to enforce the liability of such third party for damages . . . .

21 V.S.A. § 624(a). The import of this section is that the exclusivity provision bars the employee's tort recovery only with respect to claims against the employer. See *Dubie v. Cass-Warner Corp.*, 125 Vt. 476, 478, 218 A.2d 694, 696 (1966).

The anomaly involved in this case arises from the drafting of §§ 622 and 624(a) with respect to a spouse's claim. This Court has stated that § 622 applies to the spouse of an injured worker and bars the spouse's loss of consortium claim where the injured worker is entitled to compensation. *Derosia v. Book Press, Inc.*, 148 Vt. 217, 221, 531 A.2d 905, 908 (1987). Further, we stated that because a spouse who brings a loss-of-consortium claim is neither the employee nor, for the purposes of that claim, the employee's personal representative, § 624(a) provides no exception to the § 622 statutory bar that would allow a spouse to maintain the action against third parties. *Id.* at 222, 531 A.2d at 909. Putting these conclusions together, we held:

> Plaintiff is not within the class of parties to which the legislature extended the right to enforce the liability of third-party tortfeasors. Even though the express language of the statute, allowing third-party actions to be brought by only the injured employee or his personal representative, may be to some degree inconsistent with the broad underlying purpose of third-party actions, it is not our prerogative to correct this apparent internal inconsistency in the statutory scheme. The express language of § 624(a) does not, as currently written, allow a loss of consortium claim by the spouse of an injured employee against a third party.

*Id.* at 222, 531 A.2d at 908–09 (footnote omitted). Because the plaintiff failed to preserve the argument, we declined to consider her claim that the statutory bar violates the remedy guarantee of Chapter I, Article 4 of the Vermont Constitution. In this case, plaintiff Patricia Lorrain made that claim below and

renews it here, along with a claim that the distinctions created by the statutory language are irrational.

Plaintiff's claim is properly, and most easily, resolved under her alternative argument, and therefore we do not reach the issue of whether the barrier to recovery of loss-of-consortium is consistent with Article 4. Plaintiff argues that the statutory scheme allowing an injured employee who receives workers' compensation to sue a third-party tortfeasor while denying the same right to the employee's spouse is irrational. Plaintiff bases this claim on *Sienkiewycz v. Dressell*, 151 Vt. 421, 561 A.2d 415 (1989), and the familiar equal protection analysis contained therein. In *Sienkiewycz*, the plaintiff challenged the application of the exclusivity bar to a defendant who was both the employer and a co-worker. The challenge was premised on our holding in an earlier case that an employee can sue a co-employee who is also a corporate owner or officer. See *Steele v. Eaton*, 130 Vt. 1, 4, 285 A.2d 749, 751 (1971). The plaintiff argued that barring a suit against a sole proprietor, who is also a co-worker, is discriminatory. We stated that the distinction between the rights of corporate and noncorporate employees is valid if there is a "rational relation between the classification and a legitimate governmental interest." *Sienkiewycz*, 151 Vt. at 424, 561 A.2d at 417. We went on to hold that the distinction is constitutional because it rationally furthers the purpose of providing an expeditious workers' compensation remedy for all employees. Plaintiff in this case argues that the discrimination that denies her a remedy cannot meet the rational relationship test of *Sienkiewycz*.

■ The test applied in *Sienkiewycz* is grounded in the common benefits clause of Article 7, and applies when no fundamental right or suspect class is involved. See *Venman v. Patrissi*, 156 Vt. 257, 259, 590 A.2d 897, 899 (1991); *Choquette v. Perrault*, 153 Vt. 45, 52, 569 A.2d 455, 459 (1989). Under Article 7, the test is "whether the law is reasonably related to the promotion of a valid public purpose." *Choquette*, 153 Vt. at 52, 569 A.2d at 459. The test is the same under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See *Oxx v. Vermont Dep't of Taxes*, 159 Vt. 371, 376, 618 A.2d 1321, 1324 (1992).

In essence, plaintiff is arguing that it is irrational to allow an injured worker to recover from a third-party tortfeasor but to deny the spouse loss-of-consortium damages from that same party. A woman has a right to recover for loss of consortium against a tortfeasor who injures her spouse. *Whitney v. Fisher*, 138 Vt. 468, 472, 417 A.2d 934, 936 (1980); see also 12 V.S.A. § 5431 ("action for loss of consortium may be brought by either spouse"). Apparently, the only exception to this right is in the circumstances present here. Thus, the overall rule created by the statutory scheme is that a worker's spouse has a right to recover for loss of consortium unless the injured employee is also entitled to workers' compensation as a result of the accident. Plaintiff challenges the distinction between her situation and that of a spouse who may sue a tortfeasor for loss of consortium because the injured employee does not receive workers' compensation.

Defendants support their claim that the statutory scheme is rational by defending the individual parts. They point out that some courts have applied the exclusive remedy provisions to claims against co-employees, and conclude from this that the provisions may apply to third parties. They also point to cases upholding the application of exclusivity provisions to spouses' loss-of-consortium claims brought against employers. Defendants essentially argue that these lines of decision, taken together, demonstrate that it is rational to deny plaintiff the right to recover loss of consortium against a third-party tortfeasor. This approach to the question, however, ignores the rationale behind the decisions on which defendants' rely as well as the factual distinctions between those decisions and the present case. Further, it fails to present any legitimate public purpose for the resultant discrimination.

The first line of cases cited by defendants concerns an exception to the general rule that an employee may recover against a third-party tortfeasor, even though the employee is also entitled to workers' compensation. While this general rule is recognized in every state, some states have developed a limited

exception that bars such recovery against a co-employee.[3] See
2A A. Larson, The Law of Workmen's Compensation §§ 71.00,
72.21 (1992). As may be seen from the disagreement on this
issue, there are a number of reasons both for and against recog-
nizing this exception. None of the reasons provided by courts
that have adopted it, however, support defendants' position.

As Larson points out, the exception may be seen as a corol-
lary to the quid pro quo that underlies workers' compensation
law: the employee gives up the right to sue the employer in tort
in return for which the employer assumes strict liability and the
obligation to provide a speedy and certain remedy. *Id.* § 72.22.
The corollary is that employees have a similar quid pro quo with
each other: they give up the right to sue each other in return for
immunity from suit and the speedy and certain remedy. Fur-
ther, one commentator has explained:

> [I]f co-employees were routinely subject to negligence
> claims by other co-employees, employers would be pres-
> sured to provide them with liability insurance. Accordingly,
> the costs of subjecting co-employees to tort liability might
> well ultimately end up being borne by employers, not by
> way of vicarious liability, but by their employees' insistence
> upon employer-financed insurance against their individual.
> liability. This could indirectly subvert the employer's im-
> munity.

King, *The Exclusiveness of an Employee's Workers' Compen-
sation Remedy Against His Employer,* 55 Tenn. L. Rev. 405,
436 (1988). In addition, jurisdictions adopting this view often
state that immunity from co-employee suits promotes peace
and harmony between co-employees. See *Bazley v. Tortorich,*
397 So. 2d 475, 484 (La. 1981). Clearly, courts that recognize the
distinction between co-employees and other third-parties base
their approach on differences directly related to the public poli-
cies behind the workers' compensation laws.

The second group of cases on which defendants rely upholds
the application of exclusivity provisions to bar a spouse's loss of
consortium claims *where the injured employee also cannot sue*
because of the exclusive remedy provision. These cases typ-

---

[3] Vermont is not one of these states. See *Libercent v. Aldrich,* 149 Vt. 76, 80,
539 A.2d 981, 983 (1987) (co-employee actions not barred).

ically involve suits by the employee's spouse against the employer, see, e.g., *Wright v. Action Vending Co.*, 544 P.2d 82, 86 (Alaska 1975), or parties protected by the employer's status, such as the workers' compensation insurance carrier. The vast majority of courts have found that the application of exclusivity provisions to bar derivative claims by a spouse or dependents of the employee is constitutional. See 2A A. Larson, *supra*, § 66.23. The obvious rationale is that it is reasonable to extend the tort immunity of the employer to dependents who normally will benefit from the workers' compensation received by the employee.

The lines of case law cited by defendants do not support the denial of plaintiff's right to recover in the present case. Even if this Court recognized the bar against co-worker lawsuits, defendants are not co-employees and have nothing to do with the employer-employee relationship. No public purpose is fostered by immunizing them from any part of their normal liability. Further, there is no rational basis for allowing the injured party's tort claim while denying his spouse's loss-of-consortium claim. Nothing in our workers' compensation law or policy justifies the arbitrary discrimination that is involved here. The denial of loss-of-consortium damages to Patricia Ryan violated Chapter I, Article 7 of the Vermont Constitution.

*The denial of plaintiffs' motion for a new trial on the issue of damages is affirmed; the grant of defendants' motion for judgment notwithstanding the verdict on the loss-of-consortium claim is reversed; the verdict on the loss-of-consortium claim is reinstated.*