E-FILED
CNMI SUPREME COURT
E-filed: Mar 14 2023 03:15PM
Clerk Review: Mar 14 2023 03:16PM
Filing ID: 69332989
Case No.: 2021-SCC-0006-CIV
Judy Aldan





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

RICARDO E. ANTONIO, AS GUARDIAN AD LITEM FOR ALDRIC JON H.
ANTONIO, A MINOR, AND ALMA I. HABOS,
*Plaintiffs-Appellants,*

*v.*

HAENG C. BAEK,
*Defendant-Appellee.*

**Supreme Court No. 2021-SCC-0006-CIV**

---

**SLIP OPINION**

**Cite as: 2023 MP 2**

Decided March 14, 2023

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO

ASSOCIATE JUSTICE JOHN A. MANGLOÑA

ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court Civil Action No. 14-0178-CV
Presiding Judge Robert C. Naraja

———————

INOS, P.:

¶ 1      Alma I. Habos ("Habos") and Ricardo E. Antonio, as guardian ad litem of Aldric Jon H. Antonio ("Antonio"), appealed the trial court's denial of certain categories of damages in a negligence claim against Haeng C. Baek ("Baek"). We find the court erred when it awarded Habos zero damages for pain and suffering, but properly denied Habos damages for loss of income, loss of enjoyment of life, and harm to Antonio. For the reasons below, we REVERSE in part, AFFIRM in part, and REMAND for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2      This case involves an auto-to-auto accident that occurred in 2012. Baek rear-ended Habos' vehicle. Habos' eight-month-old child, Antonio, was secured in a child restraint chair in the rear passenger seat. A doctor examined Habos and Antonio after the accident the same day. Habos complained of squeezing pain on her head. The doctor also examined Antonio. Habos related that he was crying more than usual.

¶ 3      Habos began to experience body aches and stiffness in her neck and saw another doctor, Anthony Stearns ("Dr. Stearns"), ten days after the accident. Over the course of the next few years, Habos continued to see Dr. Stearns and a physical therapist, Pam Carhill ("Carhill"), for various pains. Habos sued Baek, and the case proceeded to bench trial.

¶ 4      Habos, Officer Andrew Taimanao, and Carhill testified along with Dr. Stearns as a medical expert. Baek testified and provided no expert witness. It emerged during the trial that Habos had been suffering from numerous symptoms for many years, possibly in part due to performing physically active jobs, but which she attributes to the accident. She also testified suffering from these symptoms going back to 1996, long before this accident. She was also in a motorcycle accident the same year as this accident. Dr. Stearns testified "that the underlying cause of what's going on is that she had a motor vehicle accident that caused injuries to her head, neck, shoulder." 4/23/19 Tr. 114. Habos also admitted she did not have any evidence that the accident harmed Antonio.

¶ 5      At the conclusion of the bench trial, the court granted Baek's Rule 52(c) motion for partial judgment against Antonio and dismissed his claims because of insufficient evidence that he suffered emotional or physical injury.

¶ 6      The court found Baek negligent per se.[1] The court also found "Dr. Stern's [sic] testimony that this accident exacerbated [Habos'] pre-existing aliments [sic]

---

[1]    It found a violation of 9 CMC § 5251(b), which states: "[i]n no event shall any motor vehicle be operated at a speed greater than will permit it to be stopped within the assured clear distance ahead." Violations of an assured clear distance statute occur when a driver collides with an object that is (1) ahead of him in his path of travel, (2) stationary or moving in the same direction as the driver, (3) the object did not suddenly appear in the driver's path and (4) was reasonably discernible. *Pond v. Leslein*, 647 N.E.2d 477, 478 (Ohio 1995).

persuasive." *Antonio v. Baek*, Civ No. 14-0178 (NMI Super. Ct. Jan. 22, 2021) (Findings of Fact and Conclusions of Law at 3) ("FOFACL"). The court was more skeptical of the diagnosis that Habos suffered from Post-Traumatic Stress Disorder given the doctor's lack of expertise in psychiatry, but noted that he "provided otherwise detailed testimony about Habos' soft-tissue damage and other physical pains." FOFACL at 12. The court struggled to determine how much to award Habos for pain and suffering: "More difficult for this Court is assessing the extent to which the Defendant caused the Plaintiff's injuries, which the Plaintiff admitted were preexisting but her physician testified were aggravated by the accident and determining an appropriate amount of damages." FOFACL at 5.

¶ 7    Accepting Dr. Stearns' testimony that the accident exacerbated Habos' preexisting conditions, the court awarded her past and future medical expenses. It declined to award any damages for pain and suffering. Comparing the situation to a different Superior Court case where "the plaintiff testified as to her specific level of pain for specific durations of time," it said:

> The instant case, however, lacks sufficient evidence as to the degree or duration of the pain and suffering experienced by the plaintiff. Rather, the plaintiff only estimated her intermittent pain on a scale of 1-10 in the days following the accident. TR 190. Although her injuries may be permanent, no evidence was presented which would allow the Court to make a reasoned calculation of damages. The Court cannot, therefore, make any reasoned calculation of damages. "A judge is [not] authorized to just use any arbitrary figure." *MacDonald v. United States*, 900 F. Supp. at 488.
> FOFACL at 9–10.

¶ 8    The court also declined to award any damages for loss of past or future income, saying Habos' evidence was contradictory and inadequate. Finally, the court declined to award damages for diminished quality of life since they were not "proven to a reasonable degree of certainty," noting that Habos "admitted many of her ailments predated the accident." FOFACL at 11.

## II. JURISDICTION

¶ 9    We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. NMI CONST. art. IV, § 3.

## III. STANDARDS OF REVIEW

¶ 10    The issues on appeal are whether the court erred in finding that there was insufficient evidence to award damages for Habos' pain and suffering, her loss of enjoyment of life and income, and for Antonio's alleged injuries. We review sufficiency of the evidence to establish damages de novo. *Ishimatsu v. Royal Crown Ins. Corp.*, 2012 MP 17 ¶ 12; see also *In re Estate of Deleon Castro*, 4

NMI 102, 105 (1994) ("Whether sufficient evidence supports a court's finding is a legal conclusion reviewable de novo.")

## IV. DISCUSSION

### A. Availability of Pain and Suffering Damages

¶ 11    The Superior Court denied Habos damages for pain and suffering. On appeal, she argues that it is logically inconsistent for the court to award medical expenses and then to deny damages for pain and suffering, citing our decision in *Owens v. Commonwealth*, 2012 MP 5. There we said, "considering the uncontroverted testimony that [the plaintiff's] injury produced physical pain following strenuous activity and prevented or restricted his participation in a number of physical activities he had enjoyed prior to his injury, we find that no reasonable jury could have concluded [the plaintiff's] future noneconomic damages to be zero." *Id.* at ¶ 18. We find *Owens* persuasive, but it is not precisely on point here because Habos' testimonies were self-controverted.

¶ 12    Numerous courts have considered whether a zero award in damages for pain and suffering is appropriate when medical expenses are awarded. Many have refused to disturb such decisions on the grounds that they are not per se inadequate as a matter of law. *Miller v. Swift*, 42 S.W.3d 599, 603 (Ky. 2001) (holding that sufficient evidence supported the jury's decision to give "over $5000 in medical expense and lost wages" but "nothing for pain and suffering"); *Allstate Ins. Co. v. Manasse*, 707 So. 2d 1110, 1112 (Fla. 1998) ("Our standard jury instructions do not require consistency . . . [t]hey allow a jury to return a verdict finding a permanent injury, but do not require an award of damages.") (quoting *Allstate Ins. Co. v. Manasse*, 681 So. 2d 779, 785) (Klein, J., dissenting); *Ball v. Melsur Corp.*, 633 A.2d 705, 712 (Vt. 1993) ("the jury could have awarded future medical expenses for the purpose of increasing plaintiff's future earning capacity rather than alleviating pain or it could have concluded that the amount expended for medicine and treatment would eliminate the pain."); *Miller v. San Diego Gas & Elec. Co.,* 28 Cal. Rptr. 126, 128 (Cal. Ct. App. 1963). ("It cannot be said [ ] that because a verdict is rendered for the amount of medical expenses [without an award for pain and suffering] the verdict is inadequate as a matter of law.").

¶ 13    Other courts consider such outcomes impermissibly illogical. For example, the Iowa Supreme Court considered a car accident case where the jury awarded medical expenses but nothing for pain and suffering. That court said:

> [The defendant] vigorously contested the extent of [the plaintiff]'s injuries and impeached him with his own inconsistent statements. The jury could have found [the plaintiff] suffered only minimal injuries in the accident and greatly exaggerated his complaints of pain. The evidence supported a finding that the ongoing chiropractic treatment, and much of his other medical care, was for preexisting conditions or unrelated to the accident. Yet, the

> jury found [the defendant]'s negligence caused [the plaintiff] to incur $16,937 in medical expenses . . . These findings cannot be reconciled with the award of only one dollar for pain and suffering . . . If the jury believed [the plaintiff]'s pain was nonexistent or unrelated to the accident, it should not have awarded that amount of medical expenses or lost earnings.
> *Bryant v. Rimrodt*, 872 N.W.2d 366, 379–80 (Iowa 2015) (citing *Cowan v. Flannery*, 461 N.W.2d 155, 160 (Iowa 1990) ("It is illogical to award past and future medical expense incurred to relieve headache, neck and back pain and then allow nothing for such physical and mental pain and suffering.")).

¶ 14    We find *Bryant* persuasive and agree with the reasoning of the Iowa Supreme Court. If a tort causes a plaintiff to require medical care, the plaintiff must have some problem afflicting them which warrants compensation in the form of damages for pain and suffering. We emphasize that each case is distinct, and depending on the circumstances, a low award for pain and suffering, even a nominal award, may be appropriate even if the medical expenses are significant. But whenever medical expenses are awarded, some damages for pain and suffering must follow.

¶ 15    Here, the court acknowledged that Dr. Stearns gave "detailed testimony about Ms. Habos's soft-tissue damage and other physical pains." FOFACL at 12. It also said that Habos "estimated her intermittent pain on a scale of 1-10 in the days following the accident." FOFACL at 9. Nevertheless, the court concluded there was insufficient evidence to award damages for pain and suffering. It compared the situation to a previous Superior Court case[2] in which "the plaintiff testified as to her specific level of pain for specific durations of time, which allowed the court to calculate a formula to assess the damages." *Id.*

¶ 16    While such specific testimony is helpful, it is not necessary to award damages for pain and suffering. "Proper compensation cannot be computed by a mathematical formula, and there is no iron-clad rule for the assessment of damages." *Manning v. Michael*, 452 A.2d 1157, 1162 (Conn. 1982); *see also Caprara v. Chrysler Corp.*, 417 N.E.2d 545, 551 (N.Y. 1981) ("evaluation does not lend itself to neat mathematical calculation"); *Loth v. Truck-A-Away Corp.* 70 Cal. Rptr. 2d 571, 576 (Cal. Ct. App. 1998) ("Translating pain and anguish into dollars can, at best, be only an arbitrary allowance, and not a process of measurement") (internal citation and quotation omitted); *Mechol v. Kyos*, 5 TTR 262 (Trial Div. 1970) ("there must be some speculative determination to avoid an injustice [in awarding damages]").

---

[2]    The court cited *Arugay v. Camacho*, Civ No. 09-0116A (NMI Super. Ct. Nov. 3, 2011).

¶ 17    Like other tort damages, the existence of pain and suffering must be proven to a reasonable degree of certainty, but once its presence has been established—such as by the award of medical expenses—the plaintiff must be given compensation for pain and suffering. Courts can avoid arbitrary awards by considering factors such as the nature, extent, severity, and treatment of the injuries. *See Hilliard v. A.H. Robins Co.,* 196 Cal. Rptr. 117, 142–43 (Cal. Ct. App. 1983). If the court is struggling to determine an award, it can also seek guidance by examining similar cases from other jurisdictions.[3] *See Azadeh v. Gov't of the Islamic Republic of Iran*, No. 16-cv-1467(KBJ/GMH), 2018 U.S. Dist. LEXIS 238875, at *53 (D.D.C. June 13, 2018) (looking at other similar cases); *Geschwindner v. Sec'y of HHS*, No. 17-1558V, 2022 U.S. Claims LEXIS 378, at *18 (Fed. Cl. Jan. 28, 2022) (looking at other similar cases).

¶ 18    Habos claims her pain and suffering is worth $1,441,600, which is $100 per day for each day beginning on the date of the injury until the end of her life expectancy. FOFACL at 9. Her claim for $100 a day for pain and suffering is flawed because she testified throughout the trial that her pain would "come and go":

> MR. THOMPSON: And for how long have you experienced pain since the crash?
>
> MS. HABOS: Since the crash, it usually come and go and then until now . . .
>
> MR. THOMPSON: Okay. Has it gotten better since the crash?
>
> MS. HABOS: It usually come and go.
>
> MR. THOMPSON: Okay.
>
> MS. HABOS: I think better, the therapies help. My therapy session helps, then come back again.
> 3/6/2019 Tr. 200.

¶ 19    By her own admission, she did not and does not suffer pain every single day after the accident. The "come back again" statement indicates she would feel pain on some days and other days none. The therapist found at Habos' second assessment that she had "nice gains in strength and motion and her pain is now intermittent." 3/5/2019 Tr. 73. This suggests that Habos does not suffer daily pain. Accordingly, the court did not err in awarding her zero damages for the days in which pain was or will be absent. However, since damages were awarded for past and future medical expenses, we hold that the court must also give Habos

---

3    In cases where the extent of pain and suffering is uncertain, awards for pain and suffering which are lower than in otherwise similar fact patterns may be reasonable.

compensation for past and future pain and suffering. A new trial is not necessary to determine the damages; the court has sufficient evidence to award Habos damages for those past and future days of pain and suffering.

### B. Apportionment and Burden of Proof

¶ 20     Having determined that damages for pain and suffering must be given, we turn now to a discussion of how those damages are to be quantified. Habos argues that Baek is presumptively liable for all the pain and suffering she has experienced despite the existence of preexisting symptoms. She asserts that after a finding of negligence per se, the burden shifted to Baek to demonstrate that liability should be reduced due to a preexisting condition.[4]

¶ 21     We have not yet determined which party carries the burden in the apportionment of damages involving a plaintiff with a pre-existing condition. We look to the restatements for guidance since we have no controlling constitutional provisions, statutes, or caselaw. *In re Estate of Pangelinan*, 2018 MP 10 ¶ 25.

¶ 22     The Second Restatement of Torts § 433(a) (1965) states that "Damages for harm are to be apportioned among two or more causes where, (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm." Further, "[t]here may also be apportionment between harm which results from a pre-existing condition, for which the defendant is no way responsible, and the further harm which his tortious conduct has caused." *Id*. cmt. (e).

¶ 23     The Restatement's next section discusses the burden of proof. Generally, "the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff." *Id.* § 433B(1). The two exceptions to the general rule which shift the burden to the defendant are:

> (1) Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more

---

4     Habos calls herself an "eggshell plaintiff" and seems to interchangeably use this term to mean that she had a preexisting condition which the accident aggravated. Reply Br. at 4–5. However, the eggshell plaintiff doctrine and aggravation are distinct concepts. *See* Restatement (Second) of Torts § 461 (1965) (explaining the eggshell plaintiff doctrine). Essentially, the eggshell plaintiff doctrine "makes the defendant responsible for all damages that the defendant legally caused even if the plaintiff was more susceptible to injury because of a preexisting condition or injury." *Iazzetta v. Nevas*, 939 A.2d 617, 619 n.4 (Conn. App. Ct. 2008) (internal quotation and citation omitted). Put another way, "a defendant takes his victim as he finds him." *Renner v. Shepard-Bazant*, 172 N.E.3d 1208, 1217 (Ind. 2021). "A defendant is thus liable to the extent that their conduct aggravates a pre-existing condition but is not liable for damages stemming from a pre-existing injury that independently causes harm." *Id. See also McLaughlin v. BNSF Ry. Co.,* 300 P.3d 925, 934–35 (Colo. App. 2012) (discussing the difference between aggravation and the eggshell plaintiff doctrine).

of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

(2) Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.
*Id.* § 433B(2)–(3).

¶ 24     Jurisdictions have interpreted § 433B of the Second Restatement of Torts differently in damages with pre-existing conditions. The Minnesota Supreme Court specifically declined to treat a plaintiff with a preexisting injury suing a single tortfeasor the same as a plaintiff injured by joint and several tortfeasors. *Rowe v. Munye*, 702 N.W.2d 729 (2005). It said that the Second Restatement of Torts "only shifts the burden of proof to the defendant in situations . . . [where] two or more actors . . . are seeking to limit their liability for the harm they have caused the plaintiff." *Id.* at 736. The court reasoned that jointly and severally liable defendants try to reduce their liability relative to the other defendants, whereas the allocation of damages that involve a preexisting injury and a single tortfeasor is between the defendant and the plaintiff. *Id.* at 740. The aggravation of a preexisting condition is a measure of damages, not a theory of liability, and "aggravation is not an affirmative defense which shifts the burden to the defendant." *Id.* at 736. In declining to shift the burden, the court discussed three policies "woven through [its] case law: (1) the policy of protecting the innocent plaintiff over the tortfeasor; (2) the policy of ensuring that the defendant is responsible only for the damages that he or she caused; and (3) the policy of placing the burden on the party with the greater amount of information." *Id.* at 739. The court concluded that putting the burden of proof on the defendant "would further the first policy, but would disregard the other two." *Id.*

Additionally, in a case involving aggravation of a preexisting injury, the plaintiff is likely to have more knowledge than the defendant of the extent of the preexisting injury. But, where there are multiple tortfeasors and injuries that are closely related in time, the plaintiff and the defendant[s] will start at approximately the same point of knowledge.
*Id.* at 740.[5]

¶ 25     The Iowa Supreme Court made a similar ruling in *Foggia v. Des Moines Bowl-O-Mat*, 543 N.W.2d 889 (Iowa 1996). The plaintiff, who slipped outside a

---

[5]     Although it did not discuss the Restatement, the Alaska Supreme Court similarly said that a plaintiff with a preexisting condition is in the "best position to furnish information on the degree to which that injury was aggravated by the defendant's acts." *LaMoureaux v. Totem Ocean Trailer Express*, 632 P.2d 539, 545 (Alaska 1981).

bowling alley, had suffered injuries prior to the accident. *Id.* at 890. He argued that under the Second Restatement of Torts, the burden of proof for apportionment falls on the defendant. The court disagreed, citing § 433B(2) of the Second Restatement of Torts and holding that that it applied only to "a case in which the actions of two tortfeasors have combined to produce plaintiff's injuries." *Id.* at 894. As there was only a single tortfeasor, the burden remained on the plaintiff as stated in § 433B(1). *Id.*

¶ 26    New Jersey places the burden of proof on the plaintiff, but for policy reasons carves out specific exceptions. In *Reichert v. Vegholm*, 840 A.2d 942 (N.J. Super Ct. App. Div. 2004), New Jersey's intermediate court of appeals held that "[i]n the normal prior or post-personal injury aggravation claim, the party in the best position to present evidence of non-aggravation or exacerbation is plaintiff." *Id.* at 945 (internal quotation and citation omitted). The same rationale led the court to recognize that in certain cases, such as medical and legal practice and asbestos exposure, the defendant is more knowledgeable than the plaintiff and therefore bears the burden of proof. *Id.* at 946-–47. The court explained that "[b]urdens of persuasion and of production should be placed on the party better able to meet those burdens." *Id.* at 946. (citations omitted).[6]

¶ 27    Other jurisdictions place the burden of proof for apportionment of preexisting conditions on the defendant. The Maine Supreme Court decided a case where a man with a preexisting injured elbow further injured it during a car accident caused by a negligent driver. *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091 (Me. 1995). Finding apportionment impossible, the trial court had refused to award damages for the injury, but the Supreme Court reversed, holding that in such situations, the defendant bore liability for all the damage. *Id.* at 1093. One justice wrote:

---

[6]    In *Foggia*, the appellant had also cited New Jersey medical malpractice cases which put the burden of proof on the defendant. The Iowa Supreme Court was not persuaded and cited similar policy concerns as the *Reichert* court:

> In the case of a medical professional defendant, the burden of segregating claims on this basis is relatively light and is an area in which he presumably has considerable expertise. Placing such a burden on a nonprofessional defendant, however, would be much more onerous, as he would be asked to prove matters not only outside his area of experience, but also peculiarly within the knowledge of the plaintiff.
> 543 N.W. 2d at 894.

Other courts have questioned these policy concerns. *See Stevens v. Bangor & Arrostook R.R.,* 97 F.3d 594, 603 (1st Cir. 1996) ("given discovery of medical records and the availability of medical examinations of plaintiff by defendant's doctor . . . it is not unfair to place on defendant th[e] burden [of apportionment] and the consequences of not meeting it.").

> The decision in this case makes clear that [giving the plaintiff] the burden of proof [on apportionment] is improper. Although a defendant can still introduce evidence about a plaintiffs [sic] prior or subsequent injury and argue that the pain, suffering or disability claimed by the plaintiff in the instant case is largely the result of that earlier or later injury, the court must now make clear to a jury that the defendant has the burden of establishing the causal relationship between the earlier or subsequent injury and the pain, suffering or disability now claimed by the plaintiff.
>
> *Id*. at 1093–94 (Lipez, J., concurring).

¶ 28    Similarly, in *Lorraine v. Ryan*, 628 A.2d 543 (Vt. 1993), the Vermont Supreme Court heard an appeal from an injured plaintiff with a preexisting condition challenging the trial court's decision to allow apportionment of damages. Discussing the trial court, the Supreme Court said that it:

> instructed the jury on apportionment of damages in accordance with the principles set out in §§ 433A and 433B of the Restatement (Second) of Torts. These principles apply "whenever two or more causes have combined to bring about harm to the plaintiff, and each has been a substantial factor in producing the harm." Restatement (Second) of Torts § 433A comment a (1965). Consistent with these principles, the trial court charged the jury . . .. "First, when a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused. The burden of proof is on the Defendants to prove the extent of the damages which were caused by the preexisting condition. Second, when a plaintiff has a preexisting condition that would inevitably worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of subsequent injury. Again, the burden of proof in such cases is on the defendant to prove the extent of the damages that the preexisting condition would inevitably have caused."
>
> *Id.* at 546–47 (quotation marks added).[7]

¶ 29    Finally, a federal district court interpreting Nevada law held that "[a]ssuming that the plaintiff is not herself a negligent cause, and both parties have established multiple, proximate causes for injuries, the defendant generally bears the burden of apportioning those damages for which it is proximately responsible." *Fredericks v. Travelers Cas. Ins. Co. of Am.*, 521 Supp. 3d. 1009, 1114 (D. Nev. 2021).

---

[7]    The court went on to state that "the jury verdict can be explained by an alternative theory of damages that does not involve apportionment of damages." 628 A.2d at 547.

¶ 30    We find more persuasive the Minnesota and Iowa Supreme Courts' interpretation of the Second Restatement of Torts, which holds that plaintiffs bear the burden of proof for apportionment. *Rowe v. Munye*, 702 N.W.2d at 739; *Foggia v. Des Moines Bowl-O-Mat*, 543 N.W.2d at 894. Their analysis focuses on the plain language of § 433B(1), which says "Except as stated in Subsections (2) and (3), the burden of proof that the tortious conduct of the defendant has caused the harm to the plaintiff is upon the plaintiff." Restatement (Second) of Torts § 433B(1) (1965). As quoted above, those subsections apply in situations involving multiple tortfeasors. Here, there is a single tortfeasor, so the burden of proof remains upon the plaintiff. The cases cited by Habos either do not address the Second Restatement of Torts or fail to examine the text as closely as the Minnesota and Iowa Supreme Courts.

¶ 31    For example, *Bigley v. Craven*, 769 P.2d 892 (Wyo. 1989) discusses § 433A of the Second Restatement of Torts, but not § 433B. Moreover, while it holds that the defendant is liable for all the damages if apportionment is impossible, it does not clearly state who bears the burden of proof. *See Id*. at 898.

¶ 32    The two Nebraska Supreme Court cases which Habos cites place the burden on the defendant, but they contain no discussion of the relevant sections of the Second Restatement. *See David v. Deleon*, 547 N.W.2d 726 (Neb. 1996); *Snyder v. Contemporary Obstetrics & Gynecology*, 605 N.W.2d 782 (Neb. 2000). *Newbury v. Vogel* predates the Second Restatement and does not clearly state who bears the burden of proving apportionment, instead holding that the defendant is liable for all the harm if the injury is indivisible. *Newbury v. Vogel*, 379 P.2d 811 (Colo. 1963).

¶ 33    Finally, Habos cites sections in Dobbs and Keeton for the proposition that the defendant is liable for all the harm if the injury is indivisible, but they do not state who bears the burden of proof. *See* Dan B. Dobbs, The Law of Torts § 174, at 425 (2000); W. Page Keeton, Prosser and Keeton on The Law of Torts § 52, at 349 (5th ed. 1984). Habos claims that "Dr. Stearns' testimony does not support any apportionment, instead concluding that all of Ms. Habos' ailments arose from the accident." Reply Br. at 5. However, the record does not support her statement. Dr. Stearns never claimed that her injuries were indivisible. While he did say that the accident was responsible for most of her pain and suffering, the court was not and is not obligated to agree; it can consider factors such as the credibility of the witnesses. Therefore, we do not decide in this case whether a defendant is liable for all the harm if the injury is indivisible.

¶ 34    In addition, while access and discovery of a plaintiff's medical records is possible, the plaintiff is still in a better position than the defendant to describe the effects of an injury when they already had a preexisting condition. 702 N.W.2d at 740; 543 N.W. 2d at 894; 840 A.2d at 947; 632 P.2d at 545. Thus, although we

are principally guided by the Restatement's plain language, putting the burden of proof on the plaintiff is also a reasonable policy.

¶ 35     We hold that the plaintiff bears the burden of proof for apportionment where the plaintiff's preexisting injury is further exacerbated by a single tortfeasor. We now determine whether the court properly applied the burden of proof for each damage.

### C. Sufficiency of Evidence

#### i. Loss of enjoyment of life

¶ 36     "Loss of enjoyment of life refers to detrimental alternations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life he enjoyed prior to the injury." *Kelly v. General Ins. Co. of Am.*, 2014-0180, p. 26 (La. App. 1 Cir. 12/23/14); 168 So. 3d 528, 545. Whether a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury. *Fanguy v. Lexington Ins. Co.*, 15-450, p. 21 (La. App. 5 Cir. 12/28/16); 210 So. 3d 483, 499. "Proof of the loss of enjoyment of life relates to not what is perceived by the injured plaintiff but to the objective total or partial limitations on an individual's activities imposed by an injury." *Rufino v. United States,* 829 F.2d 354, 360 (2nd Cir. 1986). The loss is to be assessed objectively, that is, by the difference between the injured plaintiff's current capacity and those which existed before the injury. *Id*. at 361.

¶ 37     Habos seeks $144,160 in loss of enjoyment of life, calculated at $10 per day from the accident date to the end date of her life expectancy. FOFACL at 11. The sole claim for loss of enjoyment of life is that she can no longer go running. *Id*. Habos testified that she used to run one to three times a week. By her own admission, she did not run daily and if she is to be compensated for each day that she ran, then the total damage of $144,160 was unwarranted.

¶ 38     Habos provided no other evidence to form a basis of comparison of the importance running was for her pre-accident and how her inability to run has detrimentally changed her lifestyle. She offered no testimony describing her lifestyle before the accident. In fact, she testified that as soon as the day after the accident she was also able to do "normal house chores," such as "cooking, cleaning and feeding Antonio." 3/6/2019 Tr. 194, 258. Her ability to perform normal routine chores indicates no detrimental changes in her lifestyle.

¶ 39     The court considered that "many of her ailments predated the accident." FOFACL at 11. Because Habos bears the burden of proof to apportion how the injuries she sustained in the accident caused her loss of enjoyment of life compared with her preexisting injury, she had to establish what pleasures in life that she used to and can no longer enjoy. Without any other testimony from her, we agree with the court that the evidence was insufficient to award damages for loss of enjoyment of life.

*ii. Loss of income*

¶ 40     Habos asked for $10,000 for past and future loss of income that she claims resulted from her injury. FOFACL at 8. Even though Habos said she did not work for two days, the court found that Habos "did not present evidence of actual lost wages." FOFACL at 8. Regarding loss of future income, it concluded Habos provided "insufficient and contradictory evidence." FOFACL at 9. According to Habos, Dr. Stearns' testimony that her permanent disability limits her ability to perform work and Habos' own testimony that she missed work were sufficient for an award of these damages.

¶ 41     Habos testified that she did not work the day of the accident and the day after. However, she provided no evidence that she was scheduled to work these two days or that she would have worked but for the accident. Therefore, the court committed no clear error in awarding no damages for past loss of income.

¶ 42     At one point in her testimony, Habos explained that she worked as a housekeeper making beds and cleaning hotel rooms when she first came to Saipan in 1994 and that she was able to clean up to 20 rooms per day. By 2012, she was cleaning between 15 to 18 rooms. After the accident, she was still able to clean up to 15 rooms. With the support of her employer, she also transitioned to a supervisory role after the accident. Because Habos' own testimony provided that she was able to still work in a supervisory capacity to compensate for the lower number of rooms that she cleaned, she did not provide sufficient evidence of past loss of income caused by a diminished capacity for work.

¶ 43     As for future loss of income, Habos alleges that the trial court "misunderstood the degree of proof necessary to award damages for loss of earning capacity" because it placed the burden on Habos to apportion damages when it held that "'[a]ny award of future lost earnings would be speculative'" in light that Ms. Habos had symptoms since 1996 and she was in a motorcycle accident the same year as the car accident. Reply Br. 10 (quoting FOFACL at 16-17).

¶ 44     We do not agree with Habos' formulation; a plaintiff bears the burden of proof. *See Bisom v. Commonwealth,* 2002 MP 19 ¶ 17 ("the plaintiff has the burden of placing evidence in the record affording reasonable support of the sums found."). On appeal, this Court will review de novo whether the trial court's findings rest on sufficient evidence. *In re Estate of Deleon Castro*, 4 NMI 102, 105 (1994).

¶ 45     In *Bisom*, the plaintiff sued his employer for wrongful termination, among other claims, and at trial attempted to testify on the amount of lost future income. 2002 MP 19, ¶¶ 5–7. The trial court sustained the defendants' objection claiming that Bisom's testimony was speculation and that lost future income "required actuarial and economic input from an expert." *Id*. at ¶ 7. NMI Rule of Evidence 602 clearly states that a lay witness, such as the plaintiff, may only testify to matters of which he has personal knowledge. *Id*. at ¶ 13. This Court clarified that expert testimony is not required to prove future earnings when it is

based only upon former earnings and without an anticipated increase in salary. *Id.* at ¶ 20.

¶ 46    However, expert opinion may be required when the plaintiff is a contract worker requesting damages for lost future earnings. *Id.* at ¶ 20.

> While it may sometimes be assumed that an "at-will" employee would have continued his employment absent the illegal discharge, we feel that the same assumption can not be made with workers whose contracts must be renewed. Factors other than job performance, such as the future economic forecast, often preclude the renewal of a worker's contract. In such a case, barring a demonstrable practice of renewing contracts, an expert opinion would be required to establish the likelihood that the plaintiff's contract would have been renewed.
> *Id*. n.5.

¶ 47    Here, the record lacks expert testimony that Habos' contract work status would have been renewed and her actual loss of wages to project future loss of income. Thus, the trial court did not err in denying any award for future loss of income.

### D. Analysis of Damages Due to Antonio

¶ 48    At the conclusion of the trial, Baek moved for a Rule 52(c) motion for judgment on partial findings against Antonio. The court granted the motion, finding insufficient evidence that Antonio suffered any emotional or physical injury. Antonio's doctors observed him as "playful," including on the visit the very afternoon of the accident. 3/6/2019 Tr. 233, 241–43. Three days later, Dr. Stearns observed him as normal and testified that there would be no follow up doctor's visit. Months later, at his well child check-up, Habos reported that Antonio was sleeping well and medical records reflect that he met all his developmental milestones for his age and was a healthy one-year old.

¶ 49    Habos claimed that for three months after the accident, Antonio was 'cryful' and that his sleeping pattern changed where he would wake up from his sleep suddenly crying. 3/6/2019 Tr. 183–85. However, Dr. Stearns testified that it is possible that Habos' observed Antonio with some degree of her own anxiety which may or may not be an accurate observation. Indeed, when Habos was asked by her counsel how Antonio changed in that three months duration, Habos replied "[t]he only thing I have noticed from him . . . is that I am always worrying because the behavior changes a lot. So, I need to adjust myself." *Id.* at 198.

¶ 50     Ultimately Habos testified that she had no evidence that Antonio was hurt in any way by the accident.[8] We find the court properly denied Antonio any damages.

### V. Conclusion

¶ 51     Habos' claims for damages for past and future loss of income, loss of enjoyment of life, and Antonio's injuries were correctly denied. The court erred in awarding zero damages for pain and suffering. The court must determine based on the evidence already before it how much is appropriate to award Habos for pain and suffering. For the foregoing reasons, the trial court's ruling is AFFIRMED in part and REVERSED in part. This matter is REMANDED for further proceedings consistent with this opinion.

So Ordered this 14th day of March, 2023.


  /s/
ALEXANDRO C. CASTRO
Chief Justice


  /s/
JOHN A. MANGLOÑA
Associate Justice


  /s/
PERRY B. INOS
Associate Justice


COUNSELS

Colin Murphy Thomson, Thompson Law, LLC, Saipan, MP, for Plaintiff-Appellants.

Mark A. Scoggins, Smith, F Matthew, LLC, Saipan, MP, for Defendant-Appellee.


NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, email Supreme.Court@NMIJudiciary.com.

---

[8]     "MS. HOLMES: And you have no evidence that your son was hurt in anyway [sic] by this accident, do you?

MS. HABOS: No."
3/6/2019 Tr. 243.